**Nos. 12-3239 & 12-3352**

# In the
# United States Court of Appeals
## for the Eighth Circuit

BANK OF AMERICA, N.A.,

*Plaintiff-Appellant/*
*Cross-Appellee,*

v.

JB HANNA, LLC; KERZEN PROPERTIES, LLC; BURT HANNA;
and HANNA'S CANDLE COMPANY,

*Defendants-Appellees/*
*Cross-Appellants.*

_____

Appeal from the United States District Court
for the Western District of Arkansas, Fayetteville Division, No. 5:10-cv-05220-BSM.
The Honorable **Brian S. Miller**, Judge Presiding.

## BRIEF OF DEFENDANTS-APPELLEES/CROSS-APPELLANTS

TIMOTHY L. BROOKS (#89187)
JEFF MITCHELL (#95149)
WILLIAM B. PUTMAN (#91198)
TAYLOR LAW PARTNERS LLP
P.O. Box 8310
Fayetteville, Arkansas 72703
Telephone: (479) 443-5222
Facsimile: (479) 443-7842

*Attorneys for Appellees/Cross-Appellants*
*JB Hanna, LLC, Kerzen Properties, LLC,*
*Burt Hanna and Hanna's Candle Company*


Appellate Case: 12-3352     Page: 1     Date Filed: 02/07/2013 Entry ID: 4002649

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

Beginning in 1998 Bank of America made a series of fixed rate loans to Appellees. For each loan a variable rate promissory note was used in conjunction with a corresponding interest rate derivative, known as a "Swap," to synthetically fix the interest rate for the length of the loans. A dispute arose when the Bank asserted that the Note portion of one such loan, executed in 2005, was to mature in September 2010, even though its corresponding Swap did not mature until 2015.

The Bank contended that Appellees' failure to pay a balloon balance of the Note at maturity in September 2010 constituted a breach of that loan and a cross-breach of other loans. Appellees contended they were not in breach because the *loan* had not matured, and because they had never missed a payment on any loan.

The Bank sued for breach of contract. Appellees countersued for breach and other claims, but the district court dismissed those claims on Summary Judgment. After a seven day jury trial, defense verdicts were returned on each of the Bank's claims. The Bank's post-judgment motions for relief were denied.

The Bank now alleges numerous reversible errors by the trial court, most of which it failed to preserve for appeal. Appellees find no error in the court's judgment on the jury's verdict, but contend the district court did err in dismissing its counterclaims, and for refusing to instruct the jury on its affirmative defenses.

Appellees request oral argument allowing twenty minutes per side.

i

## CORPORATE DISCLOSURE STATEMENT

Separate Appellees JB Hanna, LLC, Kerzen Properties, LLC, and Hanna's Candle Company, are not subsidiaries of any other corporation, and no publicly held corporation owns 10% or more of its stock and/or membership interests.

ii

# TABLE OF CONTENTS

**Page**

SUMMARY AND REQUEST FOR ORAL ARGUMENT. . . . . . . . . . . . . . . . . i

CORPORATE DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

JURISDICTION STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES ON CROSS-APPEAL. . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

I.      THE DISTRICT COURT'S DENIAL OF THE BANK'S
        MOTION TO STRIKE JURY WAS NOT ERRONEOUS
        OR PREJUDICIAL, AS NEITHER PARTY HAD WAIVED
        ITS  CONSTITUTIONAL RIGHT TO TRIAL BY JURY
        WITH RESPECT TO THE 2005 PROMISSORY NOTE
        AND LOAN AGREEMENT, FROM WHICH ARISE
        THE BANK'S CENTRAL AND PREDICATE
        ALLEGATION FOR BREACH OF CONTRACT. . . . . . . . . . . . . . . . 18

II.     THE DISTRICT COURT PROPERLY ENTERED
        JUDGMENT ON THE JURY'S VERDICT BECAUSE
        THE BANK WAS NOT ENTITLED TO JUDGEMENT
        AS A MATTER OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Appellate Case: 12-3352     Page: 4     Date Filed: 02/07/2013 Entry ID: 4002649

  A.  The Bank Failed to Make a Timely Rule 50(a) Motion. . . . . . . . 25

  B.  Other Motions, Objections and Dicta Cannot Substitute
    for a Proper Rule 50(a) Motion. . . . . . . . . . . . . . . . . . . . . . . . . 28

  C.  The Bank was Not Entitled to JAML. . . . . . . . . . . . . . . . . . . . . 31

    1.  The Breach of Contract Issues Were Properly
      Submitted to Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

      a.  Whether the Contract Was Unambiguous. . . . . . . . . 32

      b.  Evidence of Breach was in Dispute. . . . . . . . . . . . . . 34

    2.  The Jury was Properly Instructed on Waiver,
      Mitigation, Breach, and the Duty of Good Faith
      and Fair Dealing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

      a.  Instruction 24, AMI 2437, Waiver. . . . . . . . . . . . . . 38

      b.  Instruction 25, AMI 2230, Mitigation. . . . . . . . . . . 39

      c.  Instruction 23, AMI 2427, Breach. . . . . . . . . . . . . . 40

      d.  Instruction 28, AMI 2426, Good Faith and
        Fair Dealing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

III.  THIS COURT SHOULD NOT ORDER A NEW TRIAL
   WHERE THE BANK FAILED TO PRESERVE A CHALLENGE
   TO THE SUFFICIENCY OF THE EVIDENCE, FAILED TO
   PRESERVE OTHER ERRORS OF LAW ON WHICH ITS
   APPEAL IS PREMISED, AND WHERE THERE HAS NOT
   OTHERWISE BEEN A CLEAR ABUSE OF DISCRETION
   BY THE DISTRICT COURT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

  A.  The Bank Cannot Challenge the Sufficiency
    of the Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

iv

Appellate Case: 12-3352  Page: 5  Date Filed: 02/07/2013 Entry ID: 4002649

B.    Parol Evidence was Properly Admitted. . . . . . . . . . . . . . . . . . . . .  47

C.    The Jury was Properly Instructed. . . . . . . . . . . . . . . . . . . . . . . . . .  47

D.    Where the Bank Did Not Proffer an Instruction, and
      Where the Bank Did Not Object to Closing Arguments,
      the District Court Did Not Err in Failing to Grant a
      New Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  48

ARGUMENT - CROSS-APPEAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  52

I.    THE DISTRICT COURT ERRED IN DISMISSING
      DEFENDANTS' COUNTERCLAIMS FOR FRAUD,
      BREACH OF FIDUCIARY DUTY, DECEPTIVE TRADE
      PRACTICES, NEGLIGENCE AND PUNITIVE DAMAGES
      BASED ON THE STATUTE OF LIMITATIONS.. . . . . . . . . . . . . . . .  52

      A.    Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53

      B.    Tolling and the Summary Judgment Standard. . . . . . . . . . . . . . .  57

II.   THE DISTRICT COURT ERRED IN DISMISSING
      APPELLEES' COUNTERCLAIMS BECAUSE SETOFF
      IS AN EXCEPTION TO THE STATUTE OF LIMITATIONS. . . . . . .  58

III.  THE DISTRICT COURT ERRED IN DISMISSING
      APPELLEES' COUNTERCLAIM FOR BREACH OF
      CONTRACT AS A MATTER OF LAW. . . . . . . . . . . . . . . . . . . . . . . .  59

IV.   THE DISTRICT COURT ERRED IN DISMISSING
      APPELLEES' COUNTERCLAIM FOR REFORMATION. . . . . . . . . .  61

      A.    Evidence of Mutual Mistake.. . . . . . . . . . . . . . . . . . . . . . . . . . .  62

      B.    Evidence of Unilateral Mistake. . . . . . . . . . . . . . . . . . . . . . . . .  63

v

V.   THE DISTRICT COURT ERRED IN MAKING SEVERAL
     RULINGS AS A MATTER OF LAW WITH REGARD TO
     CONTRACT INTERPRETATION AND FRAUDULENT
     INDUCEMENT, AND FOR REFUSING TO GIVE
     APPELLEES PROFFERED INSTRUCTIONS RELATING
     TO THESE RULINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

     A.   Procedural Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

     B.   Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

     C.   The District Court Erred in Failing to Construe the Note
          and Swap as One Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . 66

     D.   The Terms of the 2005 Loan are Ambiguous and
          Therefore Parol Evidence is Admissible and the Jury
          Should Have Been Instructed on Contract Interpretation. . . . . . 67

     E.   Fiduciary Duty Not Determinative of Fraudulent
          Inducement and Related Affirmative Defenses. . . . . . . . . . . . . 69

     F.   Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

CIRCUIT RULE 28A(h) CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . 78

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

Appellate Case: 12-3352    Page: 7    Date Filed: 02/07/2013 Entry ID: 4002649

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adzick v. Unum Life Insurance*, 351 F.3d 883 (8th Cir. 2003). . . . . . . . . . 2,45,46

*Aetna Ins. Co v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809,
    81 L.Ed. 1177 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,23,24

*Alexander v McEwen*, 367 Ark. 241, 246 (2006). . . . . . . . . . . . . . . . . . . . . . . 4,68

*Arnett & Arnett v. Lillard*, 245 Ark. 939, 947 (1969).. . . . . . . . . . . . . . . . 3,61,63

*Badger Capital v. Chambers Bank*, 650 F.3d 1125 (8th Cir. 2011). . . . . . . . . . 72

*Bailey v. United States Postal Service*, 208 F.3d 652,
    654 (8th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,52,57,59,61

*Bank of America v. Narula*, 46 Kan. App.2d 142 (2011). . . . . . . . . . . . . . . . . . 72

*Barker v. Clark*, 69 Ark. App. 375, 13 S.W.3d 190 (2000). . . . . . . . . . . 38,39,42

*Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000). . . . . . . . . . . . . . . . . 46

*Bennett v. Nucor Corp.*, 656 F.3d 802, 813 (8th Cir. 2011). . . . . . . . . . . . . . . 31

*Benson v. Allphin*, 786 F.2d 268 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . 30

*Bomar v. Moser*, 369 Ark. 123, 131-32, 251 S.W.3d 234 (2007). . . . . . . 3,53,58

*Bonner v. ISP Technicians, Inc.*, 259 F.3d 924, 932 (8th Cir. 2001).. . . . . . . . . 46

*Bower v. Curators of University of Missouri*, 680 F.3d 1043,
    1044-45 (8th Cir. 6-6-2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39,51

*Burrows v. Mackey Moving Systems*, 690 F.3d 1047 (8th Cir. 2012). . . . . . . . . 50

Appellate Case: 12-3352   Page: 8   Date Filed: 02/07/2013   Entry ID: 4002649

*Camp v. First Federal*, 12 Ark. App. 150 (1984). . . . . . . . . . . . . . . . . . . . . . . . . 72

*Catlett v. Local 7370 of United Paper Workers*, 69 F.3d 254,
      258-259 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982 (8th Cir. 2007). . . . . . . . . . . . . . 48

*Childrens Broadcast Corp. v. Walt Disney Company*,
      245 F.3d 1008, 1017 (8th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Coop. Fin. Ass'n, Inc. v. Garst*, 871 F. Supp. 1168, 1172
      (N.D. Iowa 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*County 20 Storage & Transfer, Inc. v. Wells Fargo Bank, N.A.*,
      No. 3:09-CV-104, 2011 WL 826349 (D.N.D. March 3, 2011). . . . . . . 2,22

*Dillon v. Nissan Motor Co.,* 986 F.2d 263, 269 (8th Cir. 1993).. . . . . . . . . . . . 43

*Eckert v. Titan Tire Corp.*, 514 F.3d 801 (8th Cir. 2008).. . . . . . . . . . . . . . . . . 58

*F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . 52

*Federal Crop Ins. Corp. v. Hester*, 765 F.2d 723, 727 (8th Cir. 1985). . . . . . . 43

*Floyd v. Koenig*, 101 Ark. App. 230 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

*Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*,
      606 F.3d 494 (8th Cir. 2010). . . . . . . . . . . . . . . . . . 4,49,50,66,69,71,72,73

*Galion Ironworks v. Otto Martin Construction*,
      176 Ark. 448, 460 (1928). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

*Gee v. Pride*, 992 F.2d 159, 162 (8th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . 51

*Greer v. Miller*, 483 U.S. 756 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Halsell v Kimberly-Clark Corp.*, 683 F2d 285, 294 (8th Cir. 1982). . . . . . . . . 28

Appellate Case: 12-3352    Page: 9    Date Filed: 02/07/2013 Entry ID: 4002649

*Hanson Motor Company v. Young*, 223 Ark. 191 (1954). . . . . . . . . . . . . . . . . . 72

*Hyundai v. McKay Motors*, 574 F.3d 637, 642 (8th Cir. 2009). . . . . . . . . . . . . 34

*In re Professional Pharmacy II*, 2-10-163-CV,
 2010 Tex. App. Lexus 7798 at *10-12
 (Tex. App. - Fort Worth September 23, 2010,
 orig. proceeding)(mem. op.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Air Crash at Little Rock, Arkansas*, 291 F.3d 503,
 509 (8th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet
 & Lumber Co., Inc.*, 195 F.3d 368, 374 (8th Cir. 1999). . . . . . . . . . . 22,23

*Innovative Home Health Care v. P.T.-O.T. Associates
 of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). . . . . . . . . . . . . 45

*Jeffers v. America Pioneer Life*, 256 Ark. 332, 337 (1974). . . . . . . . . . . . . . . 62

*Jet Asphalt & Rock v. Angelo Iafrate Const.*, 431 F.3d 613
 (8th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Jones v. Jones*, 22 Ark. App. 179, 737 S.W.2d 654 (1987). . . . . . . . . . . . . . . 58

*Keup v. Hopkins*, 596 F.3d 899, 904 (8th Cir. 2010). . . . . . . . . . . . . . . . . . . . 28

*Linden v. CNH America*, 673 F.3d 829 (8th Cir. 2012). . . . . . . . . . . . . 2,30,31,45

*Little Rock Crate & Basket Co. v. Young*, 284 Ark. 295,
 681 S.W.2d 388 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,58

*Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 875 (8th Cir. 2012). . . . . . . . . . . 28,30

*Mathieu v. Gopher News Co.*, 273 F.3d 769, 776 (8th Cir. 2001). . . . . . . . . . . 27

*McDermott v. U.S.*, 760 F. 2d 879, 881-882 (1985). . . . . . . . . . . . . . . . . . . . . 62

ix

Appellate Case: 12-3352     Page: 10     Date Filed: 02/07/2013 Entry ID: 4002649

*McKeel v. City of Pine Bluff*, 73 F.3d 207, 212 (8th Cir. 1996). . . . . . . . . . . . . 27

*Medical Air Tech. Corp v. Marwan Inv., Inc.,* 303 F.3d 11,
    18 (1st Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mems v. City of St. Paul*, 327 F.3d 771 (8th Cir. 2003). . . . . . . . . . . . . . . . . . 50

*Merrill Lynch v. First National Bank of Little Rock*,
    774 F.2d 909 (8th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

*Minerva Enter., Inc. v. Bituminous Casualty*, 312 Ark. 128 (1993).. . . . . . . . . 68

*Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 373 F.2d 136,
    142 (8th Cir. 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ondrisek v. Hoffman*, 698 F.3d 1020, 1025 (8th Cir. 2012). . . 31,32,34,37,40,42

*Ondrisek v. Hallmark*, 898 F.3d 1020, 1025 (8th Cir. 2012).. . . . . . . . . . . . . . 30

*Ortiz v. Jordan*, 131 S.Ct. 884, 889 (2011).. . . . . . . . . . . . . . . . . . . . . . . 2,28,30,45

*Parton v. White*, 203 F.3d 552, 556 (8th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . 45

*PC Scale, Inc. v. Roll-Off Services, Inc*., 2010 Ark. App. 745,
    ___ S.W.3d ___ (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

*Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541,
    548 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*PFS Distrib. Co. v. Raduechel*, 574 F.3d 580, 589 (8th Cir. 2009). . . . . . . . . . 48

*Pulla v. Amoco Oil Company*, 72 F.3d 648, 655 (8th Cir. 1995).. . . . . . . . . . . 27

*Raven Indus., Inc. v. Topcon Positioning Sys. Inc*.,
    No. Civ. 07-4154, 2009 WL 2998570, at page 7
    (D.S.D. Sept. 18, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

x

*Rockport Pharmacy, Inc. Digital Simplistics, Inc.*, 53 F3d 195,
    197-198 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Sanford v. Crittenden Memorial Hospital*, 141 F.3d 882,
    884 (8th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Shaw Hofstra & Assoc. v. Ladco Development*, 673 F.3d 819,
    825 (8th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,65,71

*Simco v. Ellis*, 303 F.3d 929, 931 (8th Cir. 2002). . . . . . . . . . . . . . . . . . . . 46

*Simpson v. Braden,* 2011 Ark. App. 250, ___ S.W.3d ___ (2011). . . . . . . . . 3,58

*Slidell v. Millennium Inorganic Chemicals*, 460 F.3d 1047,
    1054 (8th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*Smith v. Ferrel*, 852 F.2d 1074 (8th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . 2,27

*Southern Wire v. Mountain Valley Spring Co.*,
    646 F.3d 526 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Stokes v. Roberts*, 289 Ark. 319, 711 S.W.2d 757 (1986). . . . . . . . . . . . 3,4,60,66

*Studnicka v. Pinheiro*, 618 F.2d 799, 801-802 (8th Cir. 2010). . . . . . . . . . 2,27,28

*Tri-Eagle Enterprises v. Regions Bank*, 2010 Ark. App. 64, *6-7. . . . . . . . . . . 68

*TXO Production v. Page Farms, Inc.*, 287 Ark. 304, 307 (1985). . . . . . . . . . 3,60

*U.S. v. Parish*, 606 F.3d 480, 485-486 (8th Cir. 2010). . . . . . . . . . . . . . . . . . 33

*Undem v. First National Bank of Springdale*, 46 Ark. App. 158,
    164 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

*United States v. Visinaiz*, 428 F.3d 1300, 1311 (10th Cir. 2005). . . . . . . . . . . 43

*United States v. Uphoff*, 232 F.3d 624, 626 (8th Cir. 2000). . . . . . . . . . . . . . . 49

xi

Appellate Case: 12-3352    Page: 12    Date Filed: 02/07/2013 Entry ID: 4002649

*United States v. Steele*, 610 F.2d 504, 505 (8th Cir. 1979). . . . . . . . . . . . . . . . 43

*United States v. Kelly*, 436 F.3d 992, 996 (8th Cir. 2006). . . . . . . . . . . . . . . . . 31

*Unitherm Food v. Swift-Eckrich*, 546 U.S. 394 (2006). . . . . . . . . . . . . . . . . . 45

*Van Steenburgh v. Rival Co.*, 171 F.3d 1155, 1160 (8th Cir. 1999). . . . . . . . . . 45

*Velazquez v. Riddle*, 2010 Ark. App. 662 (2010). . . . . . . . . . . . . . . . . . . . . . . 38

*Walsh v. Nat'l Computer Systems, Inc.*, 332 F3d 1150,
    1158 (8th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27,29

*Ward v. Worthen Bank & Trust Company*, 284 Ark. 355 (1984). . . . . . . . . . . . 71

*Weiss v. Turney*, 173 F.2d 617, 619 (8th Cir. 1949). . . . . . . . . . . . . . . . . . . . . 62

*Westgate GV at the Woods, LLC v. Dickson*,
    No. 10-03269-CV-S-DGK, 2010 WL 4721245,
    at page 2 (W.D. Mo. Nov. 15, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*WWP, Inc. v. Wounded Warriors Family Support*,
    628 F.3d 1032 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Wyatt v. Ark. Game & Fish Comm.*, 360 Ark. 507, 514 (2005). . . . . . . . . . . . . 62

### Statutes, Rules and Other

U.S. Const. Amend. VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,21,22

Ark. Code Ann. §16-56-102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Per Curiam Order of the Arkansas Supreme Court, April 19, 1965. . . . . 38,42,48

Fed. R. Civ. P. 50.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,15,25-32,34,44,45

Fed. R. Civ. P. 59.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,16,26,29,44,45

xii

## JURISDICTION STATEMENT

Appellees filed a timely notice of cross-appeal on October 2, 2012.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Appellate Case: 12-3352     Page: 14     Date Filed: 02/07/2013 Entry ID: 4002649

# APPELLEES' STATEMENT OF THE ISSUES

**I.** **Did the District Court Err in Denying Appellant's Motion to Strike Jury Demand of Defendants?**

   *County 20 Storage & Transfer, Inc. v. Wells Fargo Bank, N.A.*, No. 3:09-CV-104, 2011 WL 826349 (D.N.D. March 3, 2011)

   *Aetna Ins. Co v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937)

**II.** **Did the District Court Err in Denying Appellant's Motion for Judgment as a Matter of Law?**

   *Smith v. Ferrel*, 852 F.2d 1074 (8th Cir. 1988)

   *Studnicka v. Pinheiro*, 618 F.2d 799 (8th Cir. 2010)

**III.** **Did the District Court Err in Denying Appellant's Motion for New Trial?**

   *Ortiz v. Jordan*, 131 S.Ct. 884 (2011)

   *Linden v. CNH America, LLC*, 673 F.3d 829, 832-833 (8th Cir. 2012)

   *Adzick v. Unum Life Insurance*, 351 F.3d 883 (8th Cir. 2003)

Appellate Case: 12-3352    Page: 15    Date Filed: 02/07/2013 Entry ID: 4002649

## STATEMENT OF THE ISSUES ON CROSS-APPEAL

**I.    Did the District Court Err in Dismissing Appellees' Counterclaims for Fraud, Breach of Fiduciary Duty, Deceptive Trade Practices, Negligence and Punitive Damages Based on the Statute of Limitations?**

*Bomar v. Moser*, 369 Ark. 123, 131-32, 251 S.W.3d 234 (2007)

*Bailey v. United States Postal Service*, 208 F.3d 652, 654 (8th Cir. 2000)

**II.    Did the District Court Err in Dismissing Appellees' Counterclaims Because Setoff is an Exception to Appellant's Statute of Limitations Affirmative Defense?**

*Little Rock Crate & Basket Co. v. Young*, 284 Ark. 295, 681 S.W.2d 388 (1984)

*Simpson v. Braden,* 2011 Ark. App. 250, ___ S.W.3d ___ (2011)

**III.    Did the District Court Err in Dismissing Appellees' Counterclaim for Breach of Contract as a Matter of Law?**

*TXO Production v. Page Farms, Inc.*, 287 Ark. 304, 307 (1985)

*Stokes v. Roberts*, 289 Ark. 319, 711 S.W.2d 757 (1986)

**IV.    Did the District Court Err in Dismissing Appellees' Counterclaims for Reformation and Rescission?**

*Arnett & Arnett v. Lillard*, 245 Ark. 939, 947 (1969)

3

**V.** **Did the District Court Err in Ruling that the 2005 Note and Corresponding 2005 Swap Should not be Construed as One Contract, that the Written Agreements were Unambiguous, that the Parol Evidence Rule Applies, that Fraudulent Inducement Requires a Fiduciary Relationship, and for Refusing to Give Appellees' Proffered Instructions Relating to These Rulings?**

*Shaw Hofstra & Assoc. v. Ladco Development*, 673 F.3d 819, 825 (8th Cir. 2012)

*Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494 (8th Cir. 2010)

*Alexander v McEwen*, 367 Ark. 241, 246 (2006)

*Stokes v. Roberts*, 289 Ark. 319, 711 S.W.2d 757 (1986)

4

## STATEMENT OF THE CASE

The appellant in this case is Bank of America, N.A., referred to herein as the "Bank." The appellees/cross-appellants are JB Hanna, LLC, Kerzen Properties, LLC, Hanna's Candle Company, and Burt Hanna, individually. They will be referred to collectively as "Appellees."

In 1998, the Bank solicited Appellees' banking business. The Bank offered to loan Appellees money at a synthetically fixed rate of interest through the use of an interest rate derivative, also known as an interest rate "Swap." Between 1998 and June 2005, the Bank made four synthetically-fixed interest rate loans to Appellees utilizing Swaps.

In June 2005, the Bank agreed to loan JB Hanna an additional $4 million. JB Hanna's existing loans were refinanced in conjunction with the new $4 million loan. Once again, a Swap was used to synthetically fix the interest rate on the 2005 loan.

In 2010, the Bank placed Appellees on notice that the 2005 JB Hanna Promissory Note ("Note") would not be renewed on September 20, 2010, the date the Bank contends the loan matured. The balloon balance owed by JB Hanna at that time was approximately $7.2 million. It is undisputed that prior to September 20, 2010, Appellees had timely paid all monthly installments of principal and

5

interest on every loan they had ever had with the Bank. Appellees did not pay the balloon balance in September 2010 because they contended the loan was to mature in 2015.

The Bank contends that Appellees' failure to pay the loan in September 2010 constitutes a breach of that loan, as well as a cross-breach of all other financing agreements it had with Appellees. Appellees assert they were not in breach of the loan in September 2010, nor were they in breach of any other financing agreements. Appellees contend certain component parts of the 2005 refinancing transaction were incorrectly stated, *i.e.* a ten-year interest rate Swap was issued, but the corresponding Note stated it matured in five years. Appellees contend that the Bank made false representations in order to induce JB Hanna to switch from an agreed five year financing structure to a 10 year financing structure, and for then documenting the loan with mismatched Note and Swap maturities.

The Bank denies the transaction was documented incorrectly. It further denies it made any false representations with regard to the refinancing in 2005.

The Bank filed its original Complaint against Appellees on November 10, 2010. Appellees filed their Answer with jury demand and Counterclaim on December 7, 2010.

6

On June 8, 2012 the district court granted partial summary judgment in the Bank's favor, dismissing Appellees' counterclaims. The case proceeded to a jury trial on the Bank's breach of contract claims against Appellees on June 18, 2012. On June 26, 2012 the jury returned a verdict in favor of Appellees on each of the Bank's claims for relief. The district court entered a judgment on the jury's verdict on June 29, 2012.

The Bank subsequently filed post-trial motions for reconsideration, for judgment as a matter of law, and to amend/correct the judgment or in the alternative for a new trial. The district court entered separate orders denying each of the Bank's post-trial motions on August 24, 2012. This appeal ensued.

Appellate Case: 12-3352    Page: 20    Date Filed: 02/07/2013 Entry ID: 4002649

## STATEMENT OF FACTS

The lending relationship between the Bank of America, N.A. ("Appellant" or the "Bank") and Appellees began in 1998, when separate Appellee JB Hanna, LLC, ("JB Hanna") borrowed $6.5 million to construct a candle-manufacturing facility on Armstrong Avenue in Fayetteville, Arkansas (Tr. 412). Throughout the relationship, fixed-rate financing was an important part of JB Hanna's business philosophy (Tr. 413, 709-11). The Bank represented that it could loan the money to JB Hanna on a fixed-rate basis through the use of an interest rate Swap. (Tr. 418; Hanna Apdx 1066)

In May 2001, JB Hanna borrowed an additional $4.2 million from the Bank (Tr. 351, 717). As before, the Bank used a Swap to synthetically fix the interest rate on the loan (Hanna Apdx 1099, 1111; Tr. 558-59).

In 2005, JB Hanna sought to borrow an additional $4 million from the Bank in connection with the financing of a divorce settlement between Burt Hanna and his then-wife (Tr. 562,712-15). At that point, the remaining indebtedness on JB Hanna's two existing loans was approximately $7.2 million. The Bank agreed to loan JB Hanna the additional $4 million as part of an overall refinancing of JB Hanna's new and existing debt in the collective amount of $11.2 million (the "Armstrong Loan"). (Tr.450-51, 577-78, 712-17, 777-78)

8

The Bank offered, and JB Hanna agreed, that the Bank would refinance the $11.2 million Armstrong debt over a 15-year amortization (Tr. 719-21). At that time, JB Hanna already had two Swaps in place which fixed the interest rate on the existing $7.2 million debt (Tr. 578). The Bank initially proposed, and JB Hanna agreed, that one new $4 million Swap would be issued to fix the interest rate on the $4 million in "new" money being borrowed, with a five year maturity (*i.e.* a five-year Swap corresponding to a five-year Note at a synthetically fixed 5.75% rate of interest). (Hanna Add 4-7; Tr. 564, 641, 732-34, 867-69)

As late as 9:00 a.m. on June 29, 2005 (the last day of the Bank's quarter), the parties were proceeding as described above (Hanna Add 7; Tr. 577-80). This structure had been fully approved pursuant to the "original" version of the Bank's Credit Approval Report ("CAR"), as of June 28, 2005 (Hanna Apdx 1162; Tr. 567-68).

On the morning of June 29th, the Bank's loan officer (Larry Manry) and the Bank's Swap salesman (Larry Kalis) exchanged a series of internal e-mails to the effect that the Bank could realize a three-fold increase in its single-day Swap profit if they could convince JB Hanna to restructure the financing by "unwinding" its two existing Swaps (totaling $7.2 million) and enter into one new $11.2 million Swap to fix the interest rate on the entire debt for a period of ten years (Tr. 653-55;

9

Hanna Add 7-9). The Bank recommended this revised structure to JB Hanna, representing that it would be a *better deal*, because JB Hanna would pay less overall interest (Tr. 691-92, 700-02, 749-52, 821, 828-29; Hanna Add 15-16). This representation was both pretextual and false. The Bank's true motivation for recommending the revised transaction structure was to drastically increase the Bank's single-day profit and pad its quarter-end performance numbers (Tr. 583-87, 870, 872-73, 912).

In reality, the revised transaction structure was substantially *more* expensive than the original structure the parties agreed to and the Bank approved on June 28, 2005 (Tr. 592-95, 752-53, 887-93). Adding insult to injury, no one informed the Bank's attorney that the five year structure had been changed to a 10 year structure with a single Swap to fix the interest rate on the entire debt. (Tr. 966) Consequently, the new $11.2 million Swap had a maturity date in 2015, whereas its corresponding Note matured in 2010, which unknowingly left JB Hanna with the expense and risk of holding a speculative interest rate derivative for five extra years (or bearing the cost to terminate it) if, as it happened, the Bank refused to refinance the balance of the $11.2 million note balance at its stated maturity in 2010 (Tr. 606, 696-98, 747, 870, 872, 894, 913-14, 937).

10

In the course of convincing JB Hanna to change the agreed upon and approved financing structure, the Bank committed multiple affirmative acts of fraud (Tr. 748-52, 821, 828-29, 831, 872-74, 887-93, 922-23). It also engaged in a pattern of conduct intended to conceal this fraud from Appellees (Tr. 822). The Bank conceived and implemented this fraudulent scheme in such a way as to ensure that its dramatic single-day profit would not be discovered (Tr. 587-90). The Bank further concealed its fraud by failing to submit required disclosures that would have enabled JB Hanna to ascertain that the revised transaction structure was not in its best interest (Tr. 723-24, 913-15; Hanna Add 30, 19).

When the Bank discovered the documentation error, it altered the CAR to make it appear as though the mismatched Note and Swap transaction had been approved from the beginning, which it had not. (See "original" CAR excerpts at Hanna Add 17-19, and the "altered" CAR excerpts at Hanna Add 34-36, as well as testimony at Tr. 609-14, 1106-12.) Rick Parsons, the Bank's risk officer, admitted his awareness of a history of false information being inserted into CARs which he has approved. (Tr. 1112-13) But the Bank did not alert JB Hanna to the error, nor the consequences and risks associated with a mismatched Swap and Note, until 2008 (Tr.469-73).

11

In 2009, the Bank determined it would "out" Hanna, meaning it would disassociate itself from all Hanna loans (Tr. 336-37). On October 13, 2010, the Bank declared JB Hanna in default for failing to pay the balance due on the 2005 $11.2 million Note at "maturity." (Tr. 471-73) At that time, the accelerated "early" Swap termination fee was approximately $1,000,000.00 (Tr.696-97). Because the Swap was collateralized by the manufacturing facility in Fayetteville, the Bank would not release its mortgage, making refinancing with another lender impossible, and the Bank advised JB Hanna that it required a full release of liability for its dealings related to the Swap as a condition of refinancing the debt (Tr.340, 475).

Two additional loans are at issue in this litigation: a 2006 $2.4 million loan to Appellee Kerzen Properties, LLC ("Kerzen") (Bank Apdx 293-301), and a 2001 $2.4 million loan to JB Hanna on a warehouse/retail facility (the "Tontitown" loan) (Bank Apdx 216-23, 226-39). Both loans were issued with corresponding Swaps to synthetically fix the interest rate. (Bank Apdx 517, 522) Even though Kerzen and JB Hanna are separate entities, the Bank relied on "cross-default" provisions in the loan documents to declare all other obligations owed to the Bank by Appellees due immediately, subject to default interest rates, and sought to foreclose its liens (Tr.237-38; Hanna Apdx 7).

Appellate Case: 12-3352    Page: 25    Date Filed: 02/07/2013 Entry ID: 4002649

Appellees' consequential damages caused by the Bank's wrongful acts are central to their counterclaims that were erroneously dismissed, as will be argued below (Bank Apdx 69-90, 151-57).

Before trial, JB Hanna sold its manufacturing facility in Fayetteville and, as agreed by the parties, Appellees paid the Bank 100% of the net sale proceeds in the sum of $8,751,272.29. (Tr. 146, 190, 242) The parties agreed to disagree over the application of those proceeds to the existing debt. (Hanna Apdx 1266-69).

On June 8, 2012, the district court partially granted the Bank's motion for summary judgment and dismissed Appellees' counterclaims. The claims that remained for trial were the Bank's claims for breach of contract, turnover, foreclosure of rents and breach of guaranty (Bank Add 6).

Trial commenced on June 18, 2012. On June 26, 2012, the district court submitted the Bank's breach of contract claims to the jury. At no time during the trial did the Bank move for judgment as a matter of law in accordance with FRCP Rule 50(a). The jury returned unanimous verdicts in favor of each Appellee Defendant (Bank Apdx 196).

On June 29, 2012, the district court rendered final Judgment in favor of Appellees and dismissed the Bank's Complaint (Bank Add 1). The Bank subsequently filed a post-trial Motion for Reconsideration of the Court's Summary

13

Judgment Order, a Motion for Judgment as a Matter of Law, and a Motion to Amend/Correct the Judgment pursuant to Rule 59(e), or in the Alternative for a New Trial pursuant to Rule 59(a). These motions were denied. The Bank filed its timely Notice of Appeal on September 20, 2012. Appellees filed their timely Notice of Cross-Appeal on October 2, 2012.

Appellate Case: 12-3352    Page: 27    Date Filed: 02/07/2013 Entry ID: 4002649

## SUMMARY OF THE ARGUMENT

The Bank raises three points on appeal, the first being that the district court erred in allowing a jury trial. This argument fails because every claim asserted by the Bank in this litigation is based on its allegation that Appellees defaulted on a promissory note executed in 2005 that *did not* contain any jury waiver provisions. The Bank used this alleged default to declare cross-defaults on all other agreements between the parties. In light of the substantial body of case law on the right to trial by jury, the district court properly denied the Bank's motion to strike Appellees' jury demand.

The Bank's second point is the district court erred in denying its motion for judgment as a matter of law ("JAML"). The record is clear that the Bank failed to make a motion for JAML pursuant to Fed. R. Civ. P. 50(a) before the case was submitted to the jury. As a consequence, this issue is not properly before the Court on appeal. Even if it was, the evidence presented constitutes a more-than-sufficient basis for a reasonable jury to find in Appellees' favor.

The Bank's final point is the district court erred in denying its motion for new trial because the verdict was against the "overwhelming" weight of the evidence, the jury was erroneously allowed to consider parol evidence, and the jury was improperly instructed. The Bank's argument greatly exceeds the scope of relief

15

contemplated by Fed.R.Civ.P. 59(a) and demonstrates no "manifest error of law or fact" or "miscarriage of justice" in these proceedings. The Bank also failed to object to either the parol evidence introduced or the jury instructions given, so those issues were not preserved for appeal. Even if they had been, there was no reversible error.

On cross-appeal, Appellees' first point is the district court erred in granting the Bank's summary judgment motion and dismissing their counterclaims for fraud, breach of fiduciary duty, deceptive trade practices, negligence, and punitive damages on statute of limitations grounds. The gravamen of Appellees' argument is the district court oversimplified Appellees' argument in opposition to summary judgment by focusing narrowly on the issue of mismatched maturity dates in the 2005 loan documents. In so doing the district court erred by failing to properly view evidence which tolled the statute of limitations, *i.e.* the Bank's fraudulent misrepresentations and concealment of the same, in the light most favorable to Appellees.

Appellees' second point is the district court erred in denying Appellees' affirmative defense of setoff. Arkansas law is clear that a time-barred claim for affirmative relief may still be asserted as a setoff against damages up to the amount the opposing party may be entitled to recover.

16

Appellees' third point is the district court erred in dismissing their counterclaim for breach of contract. The district court erroneously believed this claim was derivative of Appellees' fraud claim, and that dismissal of the latter necessitated dismissal of the former. In addition, there was evidence of ambiguity in the 2005 loan documents that should have precluded summary judgment.

Appellees' fourth point is the district court erred in dismissing their equitable counterclaims because there was evidence of both mutual and unilateral mistake in the 2005 loan transaction and hence genuine issues of material fact. The district court failed to view this evidence in the light most favorable to Appellees.

Appellees' fifth point is the district court erred in making rulings as a matter of law, that the 2005 Note and corresponding 2005 Swap should not be construed as one contract, that the written agreements were therefore unambiguous and the parol evidence rule applies, and for refusing to give Appellees' proffered instructions relating to these rulings, and failing to instruct on their affirmative defenses. These errors all arise from the district court's erroneous interpretation and application of Arkansas law, which requires that multiple instruments documenting a single transaction be read together as one contract, and from the Court's incorrect ruling that fraudulent inducement can only exist within a fiduciary relationship.

17

## ARGUMENT

**I.** **THE DISTRICT COURT'S DENIAL OF THE BANK'S MOTION TO STRIKE JURY WAS NOT ERRONEOUS OR PREJUDICIAL, AS NEITHER PARTY HAD WAIVED ITS CONSTITUTIONAL RIGHT TO TRIAL BY JURY WITH RESPECT TO THE 2005 PROMISSORY NOTE AND LOAN AGREEMENT, FROM WHICH ARISE THE BANK'S CENTRAL AND PREDICATE ALLEGATION FOR BREACH OF CONTRACT.**

The district court properly denied the Bank's Motion to Strike Jury Demand, and its ruling should be affirmed after a *de novo* review. The Bank admits that its claims against Appellees are predicated upon its allegation that they defaulted on their obligations to the Bank pursuant to the 2005 JB Hanna Note. (Tr. 237-38; Hanna Add 31; Hanna Apdx 7) The Bank then used this alleged default as the basis for declaring Appellees in default not only on that loan but also two other outstanding and performing loans. In its June 1, 2012 Order denying the Bank's motion, the district court observed:

> [N]ot all of the documents at issue contained a provision waiving defendants' right to a trial by jury. Indeed, the 2005 Note and loan agreement between Bank of America and JB Hanna did not contain such a clause. This is notable because the record indicates that JB Hanna's alleged default on this particular loan triggered defaults on defendants' other obligations via cross-default provisions.

(Bank Add 25)

18

The Bank does not attempt to veil its contempt for the protections of the right to trial by jury afforded by the Seventh Amendment to litigants such as Appellees ("disgruntled borrowers" according to the Bank), or for the "lay fact-finder" and "lay jurors" whose service enables that right. The Bank suggests that Appellees' demand for trial by jury was merely an attempt to "game the system." It would have this Court ignore the complete absence of any provision in either the 2001 Tontitown Note and Loan Agreement or the 2005 Armstrong Note and Loan Agreement that could be construed as a waiver by either party of their Seventh Amendment right.

When it is not lamenting "lay jurors' lack of financial sophistication" and "anti-big-bank bias," the Bank acknowledges it was Appellees' alleged default on the $11.2 million Armstrong Loan, the largest amount financed by the Bank, that led to its declaration of default on October 13, 2010 (Tr.237-38; Hanna Add 31), and which precipitated the calling of all other obligations owed not only by JB Hanna, but also non-parties to the Armstrong Loan through the proclamation of cross-defaults on other performing Notes, Swaps, and mortgage liens.

To this point, the Bank's default notice (Hanna Add 31) stated as follows:

As you know, Bank has made loans to and provided other financial accommodations for, JB Hanna, as evidenced by, among other things, the 2005 loan agreement, the promissory note dated September 20,

19

2005 in the original principal amount of $11,201,000.00 ("the 2005 Note"), and the Note dated October 26, 2001, as amended, in the original principal amount of $2,400,000.00 ("the 2001 Note"). . . . This letter shall constitute notice to JB Hanna, Kerzen and guarantors that JB Hanna and Kerzen have defaulted under the loans documents (the "default") due to, among other things, the failure to pay the 2005 Note upon its maturity on September 20, 2010. Please note that a default under the 2005 Note constitutes an event of default under the Kerzen loan agreement and under the SWAP agreements involving JB Hanna and/or Kerzen (the "SWAP Agreements"). . . . ***Due to the default, Bank hereby notifies JB Hanna, Kerzen and guarantors that all obligations and liabilities of JB Hanna and Kerzen to the Bank . . . including without limitation all amounts owing under any SWAP Agreements, are hereby accelerated and are immediately due and payable to the Bank.***[1] (emphasis added).

This October 13, 2010 notice of default makes it clear that the foundation upon which the Bank based its entitlement to declare default, accelerate indebtedness, and call performing loans and obligations due was JB Hanna's alleged default on the 2005 Armstrong Loan. This conclusion was reinforced by Michael J. Hammond, Senior Vice President for the Bank ("Hammond"). In his affidavit, Hammond testified that it was JB Hanna's purported default on the Armstrong Loan, by its failure to make full payment on September 20, 2010, that caused the Bank to declare default not only on the maturing loan, but on all other

---

[1] The 2001 JB Hanna loan agreement on which the Bank seeks relief does not have a jury waiver clause either.

Appellate Case: 12-3352     Page: 33     Date Filed: 02/07/2013 Entry ID: 4002649

obligations between Appellees and the Bank. (Hanna Apdx 7-13 and Hammond's testimony at Hanna Apdx 1333-34)

The Bank's central cause of action arises out of the alleged breach by JB Hanna for failure to pay the Armstrong Loan at maturity. The Bank's other causes of action are all derived from, and predicated upon, this alleged breach. For these reasons, the Court cannot do as the Bank requests and ignore the fact that the documents upon which the Bank's cause of action is based do not contain jury waiver provisions. The Seventh Amendment affords parties the right to trial by jury in civil actions which are triable at common law. Appellees properly invoked their right to a jury trial in their responsive pleadings and counterclaims. (Hanna Apdx 14, 28) The Bank simply cannot bootstrap the waiver language from collateral documents in an attempt to deny Appellees' their right to a jury trial on the very claim its entire lawsuit is based upon.

The Bank would have the district court's decision set aside on the basis of jury waiver clauses found not in the critical loan documents upon which default was declared, but rather in the following documents executed by the parties during the course of their twelve-year banking relationship: (1) The Schedule to the September 10, 1998 ISDA Master Agreement governing future Swap transactions (Bank Apdx 406-11); (2) an inconspicuous clause near the end of a multi-page loan agreement

21

between the Bank and Kerzen, dated April 26, 2006, in which the waiver language is embedded in an Arbitration Clause (Bank Apdx 293-01); (3) yet another boilerplate provision in the Schedule to ISDA Master Agreement, dated 2002, between the Bank and Kerzen (Bank Apdx 511-16); and (4) guaranties executed by non-parties to the loan agreements containing inconspicuous waiver provisions specific to the guarantors (Bank Apdx 280-87, 289-92).

It is well-settled that the validity and enforceability of a jury waiver is governed by federal law. Eighth Circuit law on this issue was summarized succinctly in *County 20 Storage & Transfer, Inc. v. Wells Fargo Bank, N.A.*, No. 3:09-CV-104, 2011 WL 826349 (D.N.D. March 3, 2011):

> The Seventh Amendment guarantees the right to a trial by jury "[i]n [s]uits at common law." U.S. Const. Amend. VII. "Whether a party has a right to trial by jury in federal court is a question of law." *Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co., Inc.*, 195 F.3d 368, 374 (8th Cir. 1999). A party may contractually waive its Seventh Amendment right to a jury trial. *Raven Indus., Inc. v. Topcon Positioning Sys. Inc*., No. Civ. 07-4154, 2009 WL 2998570, at page 7 (D.S.D. Sept. 18, 2009) (*citing Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 373 F.2d 136, 142 (8th Cir. 1967)). The waiver must be made "knowingly and voluntarily." *Westgate GV at the Woods, LLC v. Dickson*, No. 10-03269-CV-S-DGK, 2010 WL 4721245, at page 2 (W.D. Mo. Nov. 15, 2010) (citations omitted). While the Eighth Circuit has not explicitly ruled which party bears the burden of proving whether the jury waiver was made knowingly and voluntarily, "courts within the circuit have generally held that the party attempting to enforce the waiver has the burden of proving the waiver is `knowing' and `voluntary.'" *Id.* (citing several district court

22

decisions in the Eighth Circuit). Several factors have been considered in determining whether the waiver was made knowingly and voluntarily:

> [Courts] have considered whether the waiver provision is on a standardized form agreement or newly-drafted document, in fine print or in large or bold print, set off in a paragraph of its own, in a take-it-or-leave-it or negotiated contract, and the length of the contract. [Courts] have also considered whether the waiving party was represented by counsel, whether the waiving party was a sophisticated business person aware of the consequences of the waiver, whether the parties were manifestly unequal in bargaining power, and whether there was an opportunity to review all of the terms of the contract and whether the waiving party did so.

*Id.* at \*19, *quoting Coop. Fin. Ass'n, Inc. v. Garst*, 871 F. Supp. 1168, 1172 (N.D. Iowa 1995) (internal citations omitted). Moreover, because the "right of jury trial is fundamental, *courts indulge every reasonable presumption against waiver*." *Aetna Ins. Co v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937) (emphasis added).

This Court reviews the district court's decision *de novo*. *Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet and Lumber Co.*, 195 F.3d 368 (8th Cir. 1999). The "basic principles" of this review are that "[t]here is a presumption against denying a jury trial based on waiver, and waivers must be strictly construed." *Medical Air Tech. Corp v. Marwan Inv., Inc.,* 303 F.3d 11, 18 (1st Cir. 2002), *citing*

23

*Aetna Ins. Co.,* 301 U.S. 389, 393. In the present case, application of these factors to the material facts leads to the inescapable conclusion that the jury waiver provisions set forth in extraneous documents simply can't be *read into* the critical September 20, 2005 Armstrong Note and Loan Agreement, which contain no such provisions. The Bank employs fallacious time-warp logic when it asserts that waivers contained in documents not yet contemplated, drafted, or executed (*i.e.* the Kerzen loan agreement, Guaranty and Swap of 2006) at the time of the Armstrong Loan transaction in September 2005 are evidence of a "knowing and voluntary waiver" of a constitutional right, and the district court was right to reject it.

Other courts have refused to strike a jury demand based on a jury waiver such as the one identified by the Bank contained in the 2006 Kerzen loan agreement (Bank Ex. 14), even if intended to govern a dispute as to that particular agreement, where the waiver was embedded in an Arbitration Clause. *In re Professional Pharmacy II*, 2-10-163-CV, 2010 Tex. App. Lexus 7798 at *10-12 (Tex. App. - Fort Worth September 23, 2010, orig. proceeding)(mem. op.). The Texas Court of Appeals found that the language favored by the party seeking to strike the jury demand followed language binding the parties to arbitration, as is the case with the waiver in the Kerzen loan. The Texas court also held that such language was not "conspicuous". *Id.*, at *10-11.

24

Appellees have a constitutional right to trial by jury in this matter. The Bank's right to declare default against them is inextricably linked to the central issue of whether JB Hanna defaulted on its Armstrong Loan by failing to pay off the Note on September 20, 2010. Consequently, the district court did not err in denying the Bank's Motion to Strike Jury Demand.

## II. THE DISTRICT COURT PROPERLY ENTERED JUDGMENT ON THE JURY'S VERDICT BECAUSE THE BANK WAS NOT ENTITLED TO JUDGEMENT AS A MATTER OF LAW.

The Bank contends it was entitled to judgment as a matter of law ("JAML") pursuant to Fed.R.Civ.P. 50. The Bank failed, however, to make a Rule 50(a) motion before the case was submitted to the jury. This is a fatal deficiency which prevents this Court from considering the Bank's argument. Regardless, the district court found sufficient evidence to support the jury's verdict. (Bank Add 2)

### A. The Bank Failed to Make a Timely Rule 50(a) Motion

Rule 50 provides in pertinent part as follows:

(a) Judgment as a Matter of Law.

    (1) In General. *If a party has been fully heard* on an issue *during a jury trial* and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

        (A) resolve the issue against the party; and

25

(B)    grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2)    Motion. A motion for judgment as a matter of law *may be made at any time before the case is submitted to the jury*. *The motion* **must** *specify the judgment sought and the law and facts that entitle the movant to the judgment.*

(b)    Renewing the Motion After Trial; Alternative Motion for a New Trial. *If the court does not grant a motion for judgment as a matter of law made under Rule 50(a)*, ... the movant may file a *renewed* motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59 ....* [2]

It is clear that at *no point* in the trial record does the Bank make a Rule 50(a) motion by "*specifying the judgment it sought and the law and facts entitling the Bank to judgment.*"[3]

Appellees formally rested their defense on the afternoon of the 5th trial day, at which point the case "*had been fully heard*" within the meaning of Rule 50(a).

---

[2]Throughout this section Appellees have added emphasis to certain language in Rule 50 and note that generally here to avoid the awkwardness of repeatedly including that clarification.

[3]Rule 50 was amended in 2006 to allow for the post-trial renewal of *any* Rule 50(a) motion, deleting the requirement that a pre-verdict motion had to also be renewed at the close of *all* the evidence. The official commentary makes clear that the two step remains: "*Because the Rule 50(b) motion is only a renewal of the pre-verdict motion, it can be granted only on grounds advanced in the pre-verdict motion*."

(Tr. 944)  The *Bank* did *not* make a Rule 50(a) motion at the close of Appellees'
case.  (Tr. 944-45)  Nor did it make a Rule 50(a) motion when it rested its rebuttal
case on the 6th trial day. (Tr. 1117) The Bank failed to make a Rule 50(a) motion at
*any* point before the case was submitted to the jury.  (Tr. 1119-1264; see also the
minute entries at Hanna Apdx 971-79.)

This Circuit's interpretation of Rule 50 is clear.  There is a two step process
to preserve appellate review, beginning with a motion "*before* the case is submitted
to the jury" as set out in Rule 50(a), followed by a post-verdict "renewal" of the
motion as set out in Rule 50(b).  The Court has consistently held that a party may
not challenge the sufficiency of the evidence, either in a post-trial motion to the
district court or on appeal, unless both Rule 50 requirements have been satisfied.
*Smith v. Ferrel*, 852 F.2d 1074, 1075-1076 (8th Cir. 1988); *Catlett v. Local 7370 of
United Paper Workers*, 69 F.3d 254, 258-259 (8th Cir. 1995); *Pulla v. Amoco Oil
Company*, 72 F.3d 648, 655 (8th Cir. 1995);  *McKeel v. City of Pine Bluff*, 73 F.3d
207, 212  (8th Cir. 1996); *Mathieu v. Gopher News Co.*, 273 F.3d 769, 776 (8th Cir.
2001); *Studnicka v. Pinheiro*, 618 F.2d 799, 801-802 (8th Cir. 2010).

The Bank incorrectly suggests the Eighth Circuit has taken a "liberal view"
regarding compliance with the predicate Rule 50(a) motion.  In ostensible support
of its claim the Bank cites *Walsh v. Nat'l Computer Systems, Inc.*, 332 F3d 1150,

27

1158 (8th Cir. 2003); *Halsell v Kimberly-Clark Corp.*, 683 F2d 285, 294 (8th Cir. 1982); and *Rockport Pharmacy, Inc. Digital Simplistics, Inc.*, 53 F3d 195, 197-198 (8th Cir. 1995). But in each of those cases *a Rule 50(a) motion was actually made*. The issues on appeal had to do with the timing of the pre-verdict *renewal* of a Rule 50(a) motion at the literal close of evidence under the former version of the rule[4], and/or with what precision the grounds must be articulated. Those issues are not relevant here, because the Bank simply failed to make a Rule 50(a) motion of any kind at any time.

## B. Other Motions, Objections and Dicta Cannot Substitute for a Proper Rule 50(a) Motion

Having failed to make a Rule 50(a) motion at any time after Appellees rested, the Bank now argues its pre-trial Motion for Summary Judgment should suffice. Such arguments have been soundly rejected by the Supreme Court and the Eighth Circuit. *Ortiz v. Jordan*, 131 S.Ct. 884, 889 (2011); *Lopez v Tyson Foods Inc.*, 690 F.3d 869, 875 (8th Cir. 2012); *Keup v. Hopkins*, 596 F.3d 899, 904 (8th Cir. 2010); and *Studnicka v. Pinheiro*, 618 F.2d 799, 801-802 (8th Cir. 2010).

---

[4] See footnote 1 above.

28

The Bank also argues that the district court's "thoughts"[5] about the case should be a substitute for a Rule 50(a) motion. The Bank cites this Court's decision in *Walsh*, 332 F.3d at 1158, for the proposition that a colloquy with the court can obviate the need to articulate a Rule 50(a) motion on the record. *Walsh* says no such thing. In *Walsh* a formal *written* motion for directed verdict was filed. The issue on appeal was whether a subsequent colloquy with the court could "flesh out" the basis for the motion. The Court held that "a post-trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion." *Walsh,* 332 F.3d at 1158.[6] The holding in *Walsh* precludes the Bank's post-verdict challenge to the sufficiency of the evidence.[7]

_____

[5]In the "colloquy" with the court -- excerpted at length by the Bank -- the court stated its "thoughts" about the evidence, and the actions the court was "considering." The parties were instructed to return to the courtroom later in the day to explain their respective positions. (Tr. 1120, 1133)

[6]The Bank also relies upon *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 548 (3d Cir. 2010), but that decision was based on relief under Rule 59 and Pennsylvania's "gist of the case" pleading doctrine.

[7]It was incumbent on the Bank to accept the court's invitation and formally move for JAML on the record. It would appear that the Bank, believing the jury would return a verdict in its favor, made a strategic decision to intentionally *not* move for JAML. (Tr. 1133) The Bank is not allowed to revisit its pre-verdict strategy just because the jury found for Appellees instead.

29

Next, the Bank argues that an improper jury instruction can substitute for a Rule 50(a) motion. This argument is contrary to the plain language of the Rule. The Bank cites no Eighth Circuit authority for this proposition.[8] A different standard of review is applicable to purported instruction errors. *Ondrisek v. Hallmark*, 898 F.3d 1020, 1025 (8th Cir. 2012).

The Bank further argues that its motion to strike jury demand and renewal of the same during trial somehow serves to fulfill the requirements of Rule 50(a). The Bank's argument is nonsensical and without citation to authority. The standard of review and the merits of the jury waiver argument are addressed in point number I above.

Finally, the Bank argues that certain unspecified "defenses" submitted to the jury over the Bank's objections will remedy its failure to make a Rule 50(a) motion. This is not correct. In the case cited by the Bank, *Linden v. CNH America, LLC*, 673 F.3d 829, 832-833 (8th Cir. 2012), the Court stated that when a party challenges the sufficiency of the evidence, the two step requirements of Rule 50 must be strictly met. In matters *other* than a challenge to the sufficiency of the evidence, a

---

[8]The Bank cites the Seventh Circuit's decisions which, in turn, are predicated on *Benson v. Allphin*, 786 F.2d 268 (7th Cir. 1986), where a Rule 50(b) motion was premised on a pre-trial summary judgment motion. This argument has since been rejected by the Supreme Court, *Ortiz v. Jordan*, 131 S.Ct. 884, 889 (2011), and the Eighth Circuit, *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 875 (8th Cir. 2012).

30

properly asserted objection at trial is sufficient to preserve the issue for appeal.

*Linden*, 673 F.3d at 833.

### C.    The Bank was Not Entitled to JAML.

This Court has articulated the applicable standard of review as follows: "This Court reviews the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the [non-movant] with all reasonable inferences and credibility determinations made in support of the jury's verdict." *Ondrisek v. Hoffman*, 698 F.3d 1020, 1025 (8th Cir. 2012) (*citing United States v. Kelly*, 436 F.3d 992, 996 (8th Cir. 2006). However, the *Ondrisek* decision also held, as a threshold matter, that the Court does not consider such arguments unless the issue is properly preserved and the requirements of Rule 50(a) and (b) must be strictly met. *Ondrisek*, 698 F.3d at 1025; *see also Bennett v. Nucor Corp.*, 656 F.3d 802, 813 (8th Cir. 2011).

In *Southern Wire v. Mountain Valley Spring Co.*, 646 F.3d 526 (8th Cir. 2011), where there was full compliance with Rule 50(a) and (b), this Court articulated the standard of review as follows:

> Judgment as a matter of law is only appropriate when no reasonable jury could have found for the non-moving party. In deciding whether to grant judgment as a matter of law, we may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict. *Southern Wire*, 646 F.3d at 533 (internal citations omitted)

31

Appellate Case: 12-3352    Page: 44    Date Filed: 02/07/2013 Entry ID: 4002649

In the case at bar, the district court read the Bank's JAML motion and the Appellees' response, and then conducted a substantive review of the evidence.[9] The court's order specifically provides: "Based on a thorough review of the trial record, there was sufficient evidence to support the jury's verdict." (Bank Add 2)

### 1. The Breach of Contract Issues Were Properly Submitted to Jury.

#### a. Whether the Contract Was Unambiguous.

The Bank argues the contracts were unambiguous and therefore the district court erred as a matter of law in submitting breach of contract issues to the jury. The Bank's argument fails to recognize that fact issues as to breach may still exist even where the contract is ruled unambiguous. Moreover, the Bank did not move for JAML, nor did it object to the jury being instructed on breach of contract issues. (Hanna Apdx 987-93; Bank Apdx 196-204; Tr. 1134-49.)

The Bank blames the district court for failing to rule on the ambiguity issue prior to trial and therefore "polluting" the trial with parol evidence. (Bank's brief at 23). The Bank did not preserve either grievance for appeal. As part of a lengthy pre-trial conference, Appellees explained that parol evidence was coming into the

---

[9]Technically, the court should have denied the motion when Appellees raised the Bank's lack of compliance with Rule 50(a) (see Hanna Apdx 1013). See *Ondrisek, supra.*

32

case as part of its fraudulent inducement defense, regardless of whether the contracts were deemed unambiguous. (Tr. 20-32). The district court stated it had not yet made a ruling on the ambiguity issue, and agreed that parol evidence may need to come in. The court stated:

> I will take a look ... and I'll get your ruling either right before -- right after opening or right before you start putting on your evidence so that you can have a record of what my ruling is. I know you need a ruling. (Tr. 24-25)

At the conclusion of the pre-trial hearing the district court said it was "leaning towards" letting in parol evidence (Tr. 29), and acknowledged the Bank's concern about having to constantly object to such evidence. The court offered a specific accommodation whereby the Bank was allowed to preserve its parol evidence objections outside the hearing of the jury. (Tr. 29-30)

At trial, the Bank failed to obtain a ruling as to whether the district court found the loan documentation to be ambiguous. It is the responsibility of the party raising the issue to obtain a timely ruling. Since the Bank failed to do so, appellate review is precluded. *U.S. v.* Parish, 606 F.3d 480, 485-486 (8th Cir. 2010).

Even more problematic for the Bank is the fact that it never objected to the introduction of evidence based on the parol evidence rule -- not in open court or

33

during a sidebar.  Nor did it avail itself of the district court's procedure for objecting on the record outside the presence of the jury.[10]  (Tr. 29-30)

### b.    Evidence of Breach was in Dispute

The Bank argues the jury's verdict must be vacated because there was no evidence to support Appellees' theory that they were not in breach of the contracts. If that was the case, the Bank should have made a Rule 50(a) motion for JAML. *Hyundai v. McKay Motors*, 574 F.3d 637, 642 (8th Cir. 2009).  It didn't.

The Bank makes categorically broad accusations that there is "no" evidence to support the jury's verdict.  This self-serving assertion is inaccurate.  It is also a transparent attempt to impermissibly shift the burden of proof to Appellees, who prevailed at trial.  After conducting a review of the trial transcript, viewing the evidence in a light most favorable to support the verdict with all reasonable inferences and credibility determinations made in support of the jury's verdict,[11] the district court found there was sufficient evidence.  (Bank Add 2) Some of the evidence and reasonable inferences may have been:

---

[10]The Bank did object to certain evidence based on relevance, but a word search of the evidentiary portion of the trial transcript reveals that the Bank never objected to the introduction of evidence based on the parol evidence rule.

[11]*Ondrisek v. Hoffman*, 698 F.3d 1020, 1025 (2012).

34

- The purpose of the 2005 Swap was to synthetically fix the interest rate on the loan transaction. (Tr. 302, 421, 558-59; Hanna Add 5, 10)

- The agreed terms of the loan as of 9:00 a.m. on June 29, 2005, consisted of a five year Note at 5.75% fixed interest using a five year Swap. (Tr. 580; Hanna Add 7)

- During a noon hour telephone conversation, the term of the Swap was extended to a ten year maturity. (Hanna Add 10)

- It was the Bank's idea to extend the maturity because its single-day profit increased from $45,000.00 under the initial structure, to $190,000.00 on the larger and longer term Swap. (Hanna Apdx 1382-83; Hanna Add 6-11)

- The intent of the Swap salesman was to "match" the maturity of the underlying loan. (Hanna Apdx 1391-92; Hanna Add 30)

- The Bank incorrectly informed its attorney to prepare a Note with a five year term, and failed to mention that a Swap maturity was 10 years. (Tr. 965-66)

- The Swap documentation evidences a loan in the sum of $11,200,000.00, at a "fixed rate" of 6.45%, for a term of 10 years, with

35

an incorporated amortization table. (Hanna Add 20-27; Hanna Apdx 1345-49)

- On October 13, 2010, the Bank unilaterally declared JB Hanna in breach of the Armstrong loan. (Hanna Add 31)

- JB Hanna was not in breach of the Armstrong loan, because the same did not mature until 2015. (Hanna Apdx 1344-49; Tr. 307-08)

- It is undisputed that as of October 13, 2010, that Appellees were current on all monthly payment obligations with regard to every loan they had with the Bank. (Hanna Apdx 1350-51, 1337-38)

- On October 13, 2010, when all obligations were current, the Bank declared cross-defaults of every other Note and Swap, accelerated the entire outstanding indebtedness due on all obligations, and began imposing default rates of interest. Interest on the Armstrong Note went from approximately $10,000.00 per month to over $100,000.00 per month. (Tr. 302-04; Bank Ex. 24)

- Even after the declaration of default, JB Hanna continued to make timely monthly Note payments on all three loans all the way through trial. (Hanna Apdx 1317-18; Bank Apdx 332-96)

Appellate Case: 12-3352     Page: 49     Date Filed: 02/07/2013 Entry ID: 4002649

- On May 1, 2012, JB Hanna sold its manufacturing facility and paid 100% of the net proceeds, $8,751,272.79, to the Bank. (Tr. 190, 384; Bank Apdx 537-45; Hanna Apdx 1266-69)

- The $8.75 million paid to the Bank on May 1, 2012, in addition to all of Appellees' interim monthly payments, more than satisfied Appellees' loan obligations to the Bank. (Bank Ex 24; Hanna Apdx 1266-69)

- Kerzen was not in default of tangible net worth requirements. (Tr. 134-40, 181-82, 191-92)

**2. The Jury was Properly Instructed on Waiver, Mitigation, Breach, and the Duty of Good Faith and Fair Dealing.**

The Bank erroneously suggests it is entitled to JAML because the district court erred in giving four jury instructions. A party may object to a jury instruction and thereby preserve the issue for appeal, but any such error does not necessitate entry of judgment as a matter of law. The Bank has offered absolutely no authority whatsoever in support of its argument. In *Ondrisek v. Hoffman*, 698 F.3d 1020, 1025 (8th Cir. 2012), this Court explained its jury instruction standard of review:

> Appellate review is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury. In a diversity case, state law applies to the substance of the instructions. An error in instructing

37

the jury in a civil case does not require reversal if it is more probably than not harmless. This Court should reverse only if the district court made an error that affects the substantial rights of the parties.

Under Arkansas law, "a party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in evidence to support the giving of the instruction." *Barker v. Clark*, 69 Ark. App. 375, 383, 13 S.W.3d 190 (2000). In such circumstances a court is required to give an Arkansas Model Instruction ("AMI") unless it determines the model instruction does not accurately state the law applicable to the case. *Velazquez v. Riddle*, 2010 Ark. App. 662 (2010); *see also* Per Curiam Order of the Arkansas Supreme Court, April 19, 1965.[12]

### a.    Instruction 24, AMI 2437, Waiver

The waiver instruction was limited to Kerzen. The Bank argued Kerzen was in default minimum tangible net worth covenants. Evidence at trial was that: (i) this calculation under Kerzen's methodology established covenant compliance (Tr. 134-40, 181-82, 191-92); (ii) this calculation under the Bank's methodology would mean that Kerzen was never in compliance with the covenant, not even in the first year of the loan, yet the Bank never exercised its right to call the loan (Tr. 117-18,

---

[12]The Per Curiam provides:  "If Arkansas Model Jury Instructions (AMI) contains an instruction applicable in a civil case, and the trial judge determines that the jury should be instructed on the subject, the AMI instruction shall be used unless the trial judge finds that it does not accurately state the law."

38

137-38); and (iii) the Bank was enjoying all the benefits of Kerzen's timely payment of principal and interest. (Tr. 443-44; Bank Ex. 24) At a minimum, a triable fact issue exists which entitles Kerzen to an AMI 2437 instruction. *Barker v. Clark*, 69 Ark. App. 375, 383, 13 S.W.3d 190 (2000).

Moreover, the Bank failed to preserve the objection it raises on appeal. At trial, the Bank objected to the instruction on the basis that it had provided written notice to Kerzen that continued payments -- after declaration of cross-default on October 13, 2010 -- would not serve to cure the underlying cross-default. (Tr. 1143, 1145) The argument the Bank makes on appeal is different, *i.e.* that the Bank repeatedly notified Kerzen of the existence of the covenant defaults. This Court will not consider a jury instruction appeal where the specific grounds were not distinctly articulated before the district court. *Bower v. Curators of University of Missouri*, 680 F.3d 1043, 1044-45 (8th Cir. 6-6-2012). "Even if a district court erroneously instructs a jury, this court reverses 'only where the error affects the substantial rights of the parties.'" *Bower, id.*, 680 F.3d at 1044.

### b. Instruction 25, AMI 2230, Mitigation

At trial the Bank objected to this instruction because: "That instruction is found, not in the contract defense section of the AMI, but it's actually over in the real estate and personal property section. So we don't believe its an appropriate

39

instruction under the law." (Tr. 1135)  The Bank is wrong.  In the notes on use for AMI 2442, the contract damages instruction, the editors specifically direct the use of the AMI 2230 mitigation instruction, where appropriate based on the evidence. *See* AMI 2442, 2012 Edition, Notes on Use.

A closer review of the factual basis for the instruction is not necessary because on all nine verdict interrogatories found that Appellees had not breached any of the contracts in question.  (Bank Apdx 196-204)  Consequently, the jury did not consider or assess damages associated with any breach.  Since the mitigation instruction never came into play, no substantive rights of any party were affected by giving this instruction.  See *Ondrisek, supra,* 698 F.3d at 1025.

<h3 style="text-align:center">c.      Instruction 23, AMI 2427, Breach</h3>

AMI 2427 recites basic breach of contract law and defines the terms "material breach" and "anticipatory repudiation."  This instruction was offered by Appellees and appropriately given by the district court.

Appellees argued at trial that the Bank's notice of intention to declare default, cross-defaults, accelerate all debt, and assess default rates of interest, was a material repudiation of the loan documentation between the parties.  Appellees explained the factual basis for this argument in considerable detail during its motion for directed verdict (JAML) at the close of the Bank's case in chief.  (Tr. 371-77)

40

During the jury instruction conference Appellees summarized the evidence which created a fact issue as to a material repudiation by the Bank. (Tr. 1136-39) Appellees will address two of those points in greater detail here.

First, as noted above, there is a fact question as to whether the Armstrong loan matured in 2010 or 2015. (Hanna Apdx 1344-49; Hanna Add 20-27; Tr. 307-08) Assuming a 2015 maturity, the Bank's declaration of breach, cross-defaults, etc. (Hanna Apdx 1332-33, 1317-19) constituted a material repudiation by the Bank.

Second, despite the acceleration and demand for the entire (upside down) value of the Swaps on October 13, 2010 (approximately $1 million), the Bank did not terminate the Swaps in accordance with the terms of the Swap contracts. (Tr. 328-32) The Bank's Swap salesman, Larry Kalis, testified that there are very specific notice of default and notice of termination event requirements set forth in the ISDA Master Agreement and Schedule. (Tr. 1071-72) When a party declares an event of default (or cross-default) of a Swap and declares all obligations thereby accelerated and immediately due, the notice specifying the date on which the termination will be calculated must be established within twenty (20) days of the event of default, and termination value determined at that time. (Bank Ex. 25 at ¶ 6) The Bank did not terminate the Swaps or calculate the termination value, much less provide the required notice of the same, until much later. The Kerzen Swap

41

termination and valuation occurred on February 9, 2011 (Bank Ex. 66). The JB Hanna Swap was not terminated and valued until June 2012. (Bank Ex. 62)

The trial judge found the material breach issue to be a close call, but concluded "I think there was cross-examination on the issue of whether the Bank followed the appropriate procedure in declaring the defaults." (Tr. 1142) Accordingly, given the district court's findings, as supported by the evidence outlined above, Instruction No. 23, based on AMI 2427 was proper. *Barker v. Clark*, 69 Ark. App. 375, 13 S.W.3d 190 (2000); *see also* Per Curiam Order of the Arkansas Supreme Court, April 19, 1965.

Even if this Court decided the district court erred in giving Instruction No. 23, that does not mean the judgment should be reversed, much less that the Bank is entitled to JAML. In context, the entire set of jury instructions included numerous other breach of contract instructions (see Instruction Nos. 6-17 at Hanna Apdx 986-97). The instructions as a whole "fairly and adequately represented the evidence and applicable law in light of the issues presented to the jury." See *Ondrisek,* 698 F.3d at 1025.

42

### d. Instruction 28, AMI 2426, Good Faith and Fair Dealing

The Bank devotes over three pages of its brief to arguing that AMI 2426 -- the implied duty of good faith and fair dealing -- was improper. This instruction was requested by Appellees. (Tr. 1175-76) At the conclusion of Appellees' remarks, the Bank stated it agreed with Appellees and specifically asked the court to give this instruction.[13] (Tr. 1186)

Pursuant to the "invited error doctrine," the Bank waived its right to assert error. "[I]t is fundamental that where [a party] 'opened the door' and 'invited error' there can be no reversible error." *Dillon v. Nissan Motor Co.,* 986 F.2d 263, 269 (8th Cir. 1993), *quoting Federal Crop Ins. Corp. v. Hester*, 765 F.2d 723, 727 (8th Cir. 1985); *United States v. Steele*, 610 F.2d 504, 505 (8th Cir. 1979); *see also United States v. Visinaiz*, 428 F.3d 1300, 1311 (10th Cir. 2005) (holding that defense counsel's challenge to the district court's jury instructions on appeal "is precluded as invited error" where counsel approved the instruction at trial).

---

[13]The Bank had put on substantial testimony as to Hanna's "bad faith" (Tr. 230, 235, 236, 291), and presumably wanted to hammer that point home in closing.

43

III.  **THIS COURT SHOULD NOT ORDER A NEW TRIAL WHERE THE BANK FAILED TO PRESERVE A CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE, FAILED TO PRESERVE OTHER ERRORS OF LAW ON WHICH ITS APPEAL IS PREMISED, AND WHERE THERE HAS NOT OTHERWISE BEEN A CLEAR ABUSE OF DISCRETION BY THE DISTRICT COURT.**

For the most part, the Bank has simply reiterated its JAML arguments as the basis upon which it seeks a new trial.[14]  In doing so, however, the Bank fails to recognize the proper standards of review.  It also asserts errors not preserved below. Accordingly, for the reasons set forth in Point II above and the additional reasons set forth hereafter, the Bank is not entitled to the relief it seeks.

### A.  The Bank Cannot Challenge the Sufficiency of the Evidence.

"In ruling on [a] *renewed* motion" for JAML, the district court may order a new trial pursuant to Rule 59.  See Rule 50(b)(2).  However, as explained in point II above, the Bank did not make a Rule 50(a) motion for JAML and is therefore precluded from seeking a new trial or any other remedy for insufficiency of the evidence.  Both the district court and this Court are precluded from hearing or

---

[14]The Bank did not seek a new trial as a remedy under Rule 50(b).  Instead, the Bank asked for a new trial as an alternative to its primary Rule 59(e) motion asking that the judgment be amended. (Bank Apdx 208) The Bank has therefore abandoned its primary request for relief under Rule 59(e).

44

granting any such relief.[15]  *Ortiz v. Jordan*, 131 S.Ct. 884, 892 (2011) (absent a

motion pursuant to Rules 50(a) and (b) "an appellate court is powerless to review

the sufficiency of the evidence after trial."); *Unitherm Food v. Swift-Ekrich*, 546

U.S. 394 (2006); *Linden v. CNH America*, 673 F.3d 829 (8th Cir. 2012); and *Parton

v. White*, 203 F.3d 552, 556 (8th Cir. 2000).  Rule 59 motions cannot be used to raise

arguments which could have been raised prior to entry of judgment.  *Innovative

Home Health Care v. P.T.-O.T. Associates of the Black Hills*, 141 F.3d 1284, 1286

(8th Cir. 1998).

    With a *proper* motion for new trial, the standard applied by a district court

is "whether the verdict is against the weight of the evidence, and if allowing it to

stand would result in a miscarriage of justice."  *Adzick v. Unum Life Insurance*, 351

F.3d 883, 886 (8th Cir. 2003) (citing *In re Air Crash at Little Rock, Arkansas*, 291

F.3d 503, 509 (8th Cir. 2002).  On appeal, this Court reviews a district court's *denial*

of a new trial for abuse of discretion.  *Adzick, id.,* 351 F.3d at 886; and *Van

Steenburgh v. Rival Co.*, 171 F.3d 1155, 1160 (8th Cir. 1999).

    In this case, the district court stated it conducted a "thorough review of the

trial record" and determined there were "no grounds for a new trial."  (Bank's Add

---

[15]Technically, the district court erred in even reviewing the JAML and new trial motions on the merits as to sufficiency issues.

45

A-03)   In reviewing the district court's decision, this Court must give "great deference to its judgment, because the district court has the benefit of hearing testimony and observing the demeanor of witnesses throughout the trial." *Adzick, id.*, 351 F.3d at 886 (citing *Bonner v. ISP Technicians, Inc.*, 259 F.3d 924, 932 (8th Cir. 2001) and *Sanford v. Crittenden Memorial Hospital*, 141 F.3d 882, 884 (8th Cir. 1988)).  See also *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000).

The Bank cites *Adzick,* but only identifies the district court's standard of review.  Then, ignoring the district court's "thorough review of the evidence" (Bank's Add A-03), the Bank urges this Court to "give little or no deference" to the district court's ruling.  This is a gross misstatement of the standard of review.[16]

The Bank's argument is long on self-serving conclusory remarks and short on specifics as to how or why the district court clearly abused its discretion. The Bank also erroneously attempts to shift the burden of proof to Appellees -- an invitation the Appellees must decline.  Appellees incorporate herein their response in point II above.

―――――――――――――

[16]The Bank cites *Simco v. Ellis*, 303 F.3d 929, 931 (8th Cir. 2002) and *Childrens Broadcast Corp. v. Walt Disney Company*, 245 F.3d 1008, 1017 (8th Cir. 2001), for the proposition that the Court's ruling is not sufficient to provide a "meaningful review of its decision." Notably, the specificity requirement discussed in these cases only applies when the district court *grants* a new trial, thereby depriving the non-moving party of the jury's verdict.

Appellate Case: 12-3352     Page: 59     Date Filed: 02/07/2013 Entry ID: 4002649

## B.     Parol Evidence was Properly Admitted.

As explained in point II.C.1.a above, the Bank failed to obtain a ruling on the issue of ambiguity and failed to object to the introduction of any evidence based on the parol evidence rule.  As such, the Bank has waived any assignments of error for review on appeal.[17]

The Bank also complains that the district court refused its request for a cautionary instruction to the jury on parol evidence.  The Bank cites to pages 1200-01 of the transcript, but it made no request for a cautionary instruction at that point.  Nor did it proffer an instruction for the Court's consideration.

## C.     The Jury was Properly Instructed.

The Bank contends it should be granted a new trial because the jury was improperly instructed.  In support, the Bank simply restates its JAML arguments.  Appellees will likewise reference and incorporate the standard of review and their response as set forth in section II.C.2 above.

The Bank does assert that certain instructions were a "totally inadequate expression of Arkansas law."  Those instructions, however, are based on AMI

---

[17]The Bank says it objected to parol evidence in three of its motions in limine. A close review of those motions, however, fails to note any reference or objection based on the parol evidence rule.

47

Model Instructions and are therefore proper. *See* Per Curiam Order of the Arkansas Supreme Court, April 19, 1965.

### D. Where the Bank Did Not Proffer an Instruction, and Where the Bank Did Not Object to Closing Arguments, the District Court Did Not Err in Failing to Grant a New Trial.

The Bank argues it is entitled to a new trial because the district court failed to provide a cautionary instruction and failed to admonish counsel and/or the jury regarding improper closing argument. However, the Bank neither proffered a cautionary instruction nor objected at any point during Appellees' closing argument. A district court's decision to deny a motion for a new trial is reviewed for an abuse of discretion. *Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982 (8th Cir. 2007). "The crucial determination 'is whether a new trial should have been granted to avoid a miscarriage of justice.'" *PFS Distrib. Co. v. Raduechel*, 574 F.3d 580, 589 (8th Cir. 2009). The Bank may not be heard to assert an abuse of discretion, much less a miscarriage of justice, based on arguments it never made to the district court.

The Bank cites two pages of the transcript (Tr. 1190 and 1200) for the proposition that the court refused "repeated requests" to apprise the jury of the court's rulings. What the transcript actually reflects, however, is that the Bank merely asked the Judge a question as to the court's intentions (Tr. 1190), and later

48

asked the court to make a "ruling on the record." At no time did the Bank proffer an instruction or otherwise develop the issue for appeal.

The Bank cites *Friedman & Friedman, Ltd. v. Tim McCandless, Inc*., 606 F.3d 494 (8th Cir. 2010) in support of its argument that the district court erred by failing to instruct the jury that it determined the contracts were unambiguous and dismissed Appellees' counterclaims for fraud and breach of fiduciary duty.[18] *Friedman* does not support the Bank's argument. The error at issue in *Friedman* was the refusal to instruct the jury on an affirmative defense which was supported by the evidence. In the instant case, the trial court did not refuse to give an instruction on an issue properly before the jury; rather, it declined to give an unnecessary instruction and left it to the parties to argue based on the evidence and instructions given.

"A jury is presumed to follow its instructions." *WWP, Inc. v. Wounded Warriors Family Support*, 628 F.3d 1032 (8th Cir. 2011), *citing United States v. Uphoff*, 232 F.3d 624, 626 (8th Cir. 2000); *Greer v. Miller*, 483 U.S. 756 (1987). "The district court is afforded broad discretion in choosing the form and substance of the jury instructions" and those instructions "need be neither technically perfect

---

[18]The fraud and breach of fiduciary duty counterclaims were dismissed *before* trial. (Bank Add 6)

49

nor a model of clarity." *Friedman*, 606 F.3d at 499, *citing Mems v. City of St. Paul*, 327 F.3d 771 (8th Cir. 2003).  This Court reviews jury instructions to determine "whether the instructions, when taken as a whole and in light of the particular issues presented, fairly and adequately presented the evidence and the applicable law to a jury." *Id.*  In this case, the instructions given clearly meet this standard.

The Bank makes much ado about closing arguments.  However, the transcript reveals that the Bank did not object at any point during Appellees' closing argument.  Nor did it make a record at its first reasonable opportunity thereafter. The Bank did not afford the court any opportunity to rule or offer any curative instructions to the jury.

In *Burrows v. Mackey Moving Systems*, 690 F.3d 1047 (8th Cir. 2012), a case where the appellant *had* preserved its objection for appeal, this Court stated the following about the standard of review:

> The district court is in a better position to determine whether prejudice has resulted from a closing argument, and the appellate court will not disturb the district court's ruling unless there has been an abuse of discretion.  To constitute reversible error, statements made in closing arguments must be plainly unwarranted and clearly injurious. Reversal is inappropriate when the error is harmless and did not affect the substantial rights of the parties.  A party seeking reversal in circumstances like the present ones must make a concrete showing that he or she was prejudiced by the objectionable statement.

690 F.3d at 1051 (internal citations omitted).

50

Where the appellant has failed to object to offensive remarks during closing argument, the standard of review is even more stringent. In such cases the standard of review is plain error, which is reserved for truly extraordinary situations where the error is so prejudicial as to infect the integrity, fairness, or public reputation of judicial proceedings. *Gee v. Pride*, 992 F.2d 159, 162 (8th Cir. 1993); *Bower v. Curators of the University of Missouri*, 680 F.3d 1043, 1045 (8th Cir. 2012).

Finally, the Bank offers no more than a footnote to express its disagreement with the court's award of attorney fees and costs. (See Bank's brief at page 51.) This does not constitute a proper argument on appeal, and Appellees urge this Court to disregard the same.

Appellate Case: 12-3352    Page: 64    Date Filed: 02/07/2013 Entry ID: 4002649

**I.** **THE DISTRICT COURT ERRED IN DISMISSING DEFENDANTS' COUNTERCLAIMS FOR FRAUD, BREACH OF FIDUCIARY DUTY, DECEPTIVE TRADE PRACTICES, NEGLIGENCE AND PUNITIVE DAMAGES BASED ON THE STATUTE OF LIMITATIONS.**

Appellees submitted substantial evidence to the district court in opposition to summary judgment. (Hanna Apdx 221-459, 460-73) The district court was required to view this evidence in the light most favorable to Appellees. This Court reviews the granting of summary judgment *de novo*. *Bailey v. United States Postal Service*, 208 F.3d 652, 654 (8th Cir. 2000); *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997).

The district court dismissed the above-referenced counterclaims on statute of limitations grounds. It found the 2005 Note and Swap were in Appellees' hands no later than September 20, 2005, and that the mismatched maturity dates set forth in those documents should have been discovered at that time. (Bank Apdx 151-54). The district court rejected Appellees' tolling argument, stating that while "*how* or *why* the alleged fraud was perpetrated was undiscoverable, *that* a fraud was allegedly perpetrated was easily discoverable simply upon reading the documents provided to them." (Bank Add 20)

52

The district court's analysis oversimplified Appellees' tolling arguments and failed to take into account the full nature and extent of the Bank's fraudulent conduct. In order to toll the statute of limitations on the basis of fraudulent concealment, a party must show (1) a positive act of fraud (2) that is actively concealed and (3) is not discoverable by reasonable diligence. *Bomar v. Moser*, 369 Ark. 123, 131-32, 251 S.W.3d 234 (2007). The record before the district court was replete with proof of all three elements that was more than sufficient to establish triable issues of material fact.

## A.    Factual Background

In 2005, JB Hanna sought to borrow an additional $4 million. The parties initially agreed to a five year fixed rate loan, *i.e.* a Note and a Swap with matching five year maturity dates, with a 15 year amortization. (Hanna Apdx 242-47) This structure had been fully approved by the Bank on June 28, 2005, pursuant to the "original" Credit Approval Report, and specifically agreed upon by JB Hanna. (Hanna Apdx 282-83, 245-47)

Shortly after 9:00 a.m., two Bank employees (Manry and Kalis) discussed a different structure whereby the Bank could realize a threefold increase in its single-day profit on the Swap transaction. They needed to convince JB Hanna to unwind its two existing Swaps (at a cost to "unwind" of $310,000.00) and enter into one

53

new "big" $11.2 million Swap. To gain JB Hanna's approval, Manry and Kalis represented -- falsely -- that the revised structure would result in JB Hanna paying less overall interest. The real reason for the revision, however, was not to benefit JB Hanna, but rather the Bank's desire to triple its profit and thereby pad its quarter-end performance numbers.

Evidence presented to the court included: (i) email between Manry and Kalis documenting the profit motive ("what would the revenue be," Hanna Apdx 247); (ii) email indicating quarter-end performance was the other motivating factor (Hanna Apdx 248); (iii) email showing a near threefold increase in profit ($4,300.00 per basis point versus $1,500.00 per basis point, Hanna Apdx 247-248); and (iv) representations that the revised structure would result in JB Hanna paying less in interest (Bank email confirms it was "the reason," Hanna Apdx 254-55 and related testimony at Hanna Apdx 295-96).

Hanna relied on the Bank's pretextual and false representations in agreeing to the revised loan terms. Evidence submitted to the district court included (i) a report by Appellees' financial expert, Craig McCann (revised structure was "*much worse*" for JB Hanna -- $245,000.00 and $632,000.00 more in interest, Hanna Apdx 297 at ¶45-46); and (ii) a report by Appellees' Swap expert, Elaine Philbrick, wherein she stated "[i]t was a misrepresentation for Bank of America to state that

54

the ten year Swap rate was a much better option, and/or a better overall hedge structure to be used with the corresponding debt," and that "Hanna actually paid substantially more interest by entering into the ten year blended Swap versus if they left their two existing Swaps in place and just entered into a new five year Swap on the $4 million as originally agreed." (Hanna Apdx 380 at ¶6)

With regard to the tolling issue, there was ample evidence presented to the district court that the Bank took actions to conceal its true motivation. While Manry was intent on "forward" booking the Swap on June 29th,[19] Kalis was concerned that JB Hanna might receive a quarter-end statement, known as a "mark to market" report. (Hanna Apdx 248-49) If that happened, JB Hanna would realize that the purpose of revising the structure at the last minute was not to benefit JB Hanna, but rather to benefit the Bank. Elaine Philbrick testified that the emails between Manry and Kalis document a clear attempt to conceal the Bank's unusually large profit from the customer. (Hanna Apdx 390, 392) She testified that the Bank assumed the role of a financial advisor to JB Hanna, and consequently had a duty to disclose information rather than conceal it (Hanna Apdx 390, 391, 406).

_____

[19]The end of the calendar quarter, even though the loan funding was not set to close until August 1st, Hanna Apdx 247-48).

Appellate Case: 12-3352   Page: 68   Date Filed: 02/07/2013 Entry ID: 4002649

Dr. McCann testified that "Bank of America knew that this was in their interest and contrary to the interest of their client and yet went ahead and did it and concealed it both before and after the fact from the Hanna entities.... Bank of America's actions and internal communications that I've reviewed demonstrate Bank of America succumbing to a serious conflict of interest with its clients, the Hanna entities." (Hanna Apdx 365, 376)

Evidence presented to the district court indicates the Bank engaged in active concealment by intentionally altering the terms on which loan approval had been approved. Every loan issued by the Bank must be underwritten using a Credit Approval Report ("CAR"). The CAR for the original transaction received final approval on June 28, 2005. (Hanna Apdx 282-83) When the structure of the transaction was abruptly changed on June 29, 2005, Bank procedure required employees re-approval of the loan's revised terms via the Bank's CAR modification procedure ("CARMOD"). (Hanna Apdx 415) That was not done because the re-approval process would have revealed the employees' wrongful conduct. Instead, the existing CAR was altered to make it appear as though the revised transaction with the "big" Swap had been agreed upon and properly approved on June 28th. A comparison of the two versions of the "same" CAR shows the "altered" CAR

56

(Hanna Apdx 428-29) contained information which was not known on June 28th, and therefore could not have been part of the "original" CAR.

The CARMOD procedure (Hanna Apdx 415) would have required disclosure of the purpose and justification for the revised terms. (Hanna Apdx 418-19) Bank employees readily admitted the approval process was circumvented. (See testimony of Rick Parsons, Hanna Apdx 434, 436-37.) The re-approval process on the Swap side of the transaction was circumvented as well. (Hanna Apdx 441) In addition to written justification, the Swap salesman was required to make disclosures and obtain the client's advance written approval. This was not done before the Swap was executed. (Hanna Apdx 441-43, 446)

## B.    Tolling and the Summary Judgment Standard

Appellees could not possibly have known about the Bank's fraudulent actions -- and its violations of Bank policies to conceal their actions -- without the benefit of extensive discovery. In granting summary judgment, the district court concluded that Appellees should have discovered the Bank's negligent and/or fraudulent actions and cover-up through the exercise of reasonable diligence. Appellees adamantly disagree. A district court is required to view the evidence relevant to a summary judgment motion in the light most favorable to the non-moving party, and this Court reviews *de novo*. *Bailey*, 208 F.3d at 654. Fact issues

57

as to the existence of fraud and/or fraudulent concealment, so as to toll the statute

of limitations, are for the jury to decide, not the district court. *Bomar*, 369 Ark. at

131-132; AMI 211. The district court erred when it held otherwise.

## II.    THE DISTRICT COURT ERRED IN DISMISSING APPELLEES' COUNTERCLAIMS BECAUSE SETOFF IS AN EXCEPTION TO THE STATUTE OF LIMITATIONS.[20]

Even if the statute of limitations had expired, the trial court erred by failing

to recognize the setoff exception, which allows Appellees to pursue their

counterclaims as a setoff against any damages the Bank may be awarded on its

claims. This error of law is reviewed *de novo*. *Eckert v. Titan Tire Corp*., 514 F.3d

801 (8th Cir. 2008).

Ark. Code Ann. § 16-56-102 is the codification of the setoff exception to the

statute of limitations (up to the amount being asserted by the Bank). The right of

setoff may be asserted *even if the claim would otherwise be barred by the statute*

*of limitations*. *See*, *e.g. Little Rock Crate & Basket Co. v. Young*, 284 Ark. 295, 681

S.W.2d 388 (1984); *Simpson v. Braden,* 2011 Ark. App. 250, ___ S.W.3d ___

(2011); *Jones v. Jones*, 22 Ark. App. 179, 737 S.W.2d 654 (1987).

---

[20]This point on cross-appeal is moot and need not be decided if the district
court's judgment is affirmed.

Appellate Case: 12-3352    Page: 71    Date Filed: 02/07/2013 Entry ID: 4002649

Appellees raised the setoff exception below (Hanna Apdx 239), but the court did not address it. (Bank Add 6) Appellees raised the issue again and noted the court's silence in its Motion for Reconsideration. (Hanna Apdx 909-11) The Motion for Reconsideration was denied, once again without addressing setoff. (Hanna Add 1) This was error.

## III. THE DISTRICT COURT ERRED IN DISMISSING APPELLEES' COUNTERCLAIM FOR BREACH OF CONTRACT AS A MATTER OF LAW.[21]

The trial court dismissed Appellees' breach of contract counterclaim, holding that it "must fail as a matter of law." (Bank Add 21) The rationale for this ruling was that "[Appellees'] fraud counterclaim is time-barred, and it is improper to bootstrap a breach of contract counterclaim that relies on an underlying fraud counterclaim that is untimely." (Bank Add 22) This ruling is reviewed *de novo*. *Bailey*, 208 F.3d at 654.

The district court's decision should be reversed for two reasons. First, as explained in the preceding section, the trial court erred by dismissing Appellees' counterclaim for fraud. Given that the trial court's rationale for dismissing the breach of contract counterclaim is derivative of its rationale for dismissing the fraud counterclaim, reversal of the latter decision entails reversal of the former as well.

_____

[21]This point becomes moot if the district court's judgment is affirmed.

Appellate Case: 12-3352    Page: 72    Date Filed: 02/07/2013 Entry ID: 4002649

Second, there are material issues of fact which preclude summary judgment on the breach of contract counterclaim. More specifically, there are material fact issues as to whether the 2005 "loan" matured in 2010 and whether the Bank's declaration of default, cross-defaults, acceleration, and assessment of default rates of interest, constituted a breach of contract by the Bank. Appellees raised these arguments and evidence in their response to the Bank's summary judgment motion.[22] (Hanna Apdx 686-870, 474-686)

It is clear under Arkansas law that where a plaintiff sues for breach of contract and a defendant asserts a prior breach by the plaintiff, a common scenario, a material breach by the plaintiff may excuse the defendant's obligation to perform. *TXO Production v. Page Farms, Inc.*, 287 Ark. 304 (1985). It is likewise clear that "when two instruments are executed contemporaneously, by the same two parties in the course of the same transaction, they should be considered as one contract for purposes of interpretation, absent a contrary intent." *Stokes v. Roberts*, 289 Ark. 319, 322-23 (1986). Ambiguity created by inconsistent documents cannot be resolved without consideration of extrinsic evidence of the parties' intent. *Jet Asphalt & Rock v. Angelo Iafrate Const.*, 431 F.3d 613 (8th Cir. 2005).

_____

[22]This was Appellees' contention at trial too. See point II.C.1. above. The same evidence and reasoning applies.

Appellate Case: 12-3352    Page: 73    Date Filed: 02/07/2013 Entry ID: 4002649

The evidence presented by Appellees to the district court, viewed in the light most favorable to them, indicates there were genuine issues of material fact on these key points. Accordingly, it was error to dismiss Appellees' counterclaim for breach of contract. The trial court's ruling should be reversed.

## IV. THE DISTRICT COURT ERRED IN DISMISSING APPELLEES' COUNTERCLAIM FOR REFORMATION.[23]

The district court dismissed Appellees' counterclaim for reformation on the ground that "any mistake of fact was attributable solely to [Appellees] and that the mistake was ascertainable at the time of contract formation." (Hanna Add 22) The district court erred by failing to properly apply Arkansas law and failing to consider the evidence in the light most favorable to Appellees. This Court applies a *de novo* standard of review. See *Bailey,* 208 F.3d at 654.

In *Arnett & Arnett v. Lillard*, 245 Ark. 939, 947 (1969), the Arkansas Supreme Court explained that equity will reform a written instrument under two circumstances: (1) where there has been a meeting of the minds – an agreement actually entered into, but the contract in its written form does not express what was really intended by the parties thereto, and (2) where there has been a mistake of one party accompanied by fraud or inequitable conduct of the remaining party. In

_____

[23]This point becomes moot if the district court's judgment is affirmed.

Appellate Case: 12-3352     Page: 74     Date Filed: 02/07/2013 Entry ID: 4002649

*Jeffers v. America Pioneer Life*, 256 Ark. 332, 337 (1974), the Arkansas Supreme Court said this was a "well settled rule of law." *See* also, *Wyatt v Ark. Game & Fish Comm., 360 Ark. 507, 514 (2005)*; *Weiss v. Turney*, 173 F.2d 617, 619 (8th Cir. 1949); and *McDermott v. U.S.*, 760 F. 2d 879, 881-882 (1985).

## A.    Evidence of Mutual Mistake

There is substantial circumstantial evidence that the parties never intended to create a structure involving mismatched maturities. There is a complete lack of any contemporaneous communication or internal documentation which suggests that the parties requested, discussed, or agreed upon a structure using mismatched maturities.[24] The Bank's Swap Funding Description Sheet shows the intent was to "match" the terms of the corresponding credit facility.[25] The Bank did not inform its document preparer that a Swap was being used to fix the interest rate on the monies being loaned to Appellees.[26] The mismatched Note/Swap maturities is a

---

[24]See the email traffic exhibit and the Affidavits of Greg Primm and John Scott at Hanna Apdx 563-619, 556-62; and 539-45, respectively.

[25]Hanna Add 30 and Hanna Apdx 1390-92.

[26]See McSpadden deposition (Hanna Apdx 640, at deposition transcript pages 37-38). Without the Swap Agreement, it is impossible to give effect to the parties' agreement to fix the rate at 6.45%, yet the Bank did not inform Mr. McSpadden about the existence or any details of the Swap. This explains how the mistake could have occurred.

62

highly unusual structure that would not be used for the purposes intended by this transaction.[27]

## B. Evidence of Unilateral Mistake

The district court acknowledged that Appellees might have been mistaken, but concluded that reformation was not proper because "the mistake was ascertainable at the time of contract formation," and "any inequitable conduct on the part of [the Bank] was knowable to [Appellees] at the time of formation when the contract was presented." (Bank Adds 22-23)  The court's analysis plainly contradicts Arkansas law.  In fact, reformation is an entirely proper remedy where the face of the parties' contract does not reflect the intent of one party, coupled with inequitable conduct by the other party. *Arnett & Arnett,* 245 Ark. at 947.  Evidence of the Bank's inequitable conduct, and its efforts to conceal the same, is documented in the factual background section of Appellees' first point on cross-appeal.

The trial court should have viewed this evidence as to mutual and/or unilateral mistake in the light most favorable to Appellees and denied the Bank's motion for summary judgment as to reformation and rescission. It erred in failing to do so.

―――――――――――――――

[27]See the Expert Report of Elaine Philbrick (Hanna Apdx 728).

Appellate Case: 12-3352    Page: 76    Date Filed: 02/07/2013 Entry ID: 4002649

## V.  THE DISTRICT COURT ERRED IN MAKING SEVERAL RULINGS AS A MATTER OF LAW WITH REGARD TO CONTRACT INTERPRETATION AND FRAUDULENT INDUCEMENT, AND FOR REFUSING TO GIVE APPELLEES PROFFERED INSTRUCTIONS RELATING TO THESE RULINGS.[28]

### A.  Procedural Background

Following the close of evidence on the sixth trial day, the court summoned counsel to chambers to discuss its "thoughts" about the case, and rulings it was considering. (Bank Add 27-41).  The court made no rulings at that time, instead the court said:

> I want you to put together some jury instructions that deal with the issues I just laid out.  I want you to be prepared at 4 o'clock to go on the record, make your objections or state for the record how you disagree with my *proposed* rulings, and then I'll just have to rule.  I will do it. (Bank Add 41.)

Upon reconvening the court provided its proposed jury instructions.  Counsel were invited to make objections to the court's *proposed* rulings (as discussed in chambers) and to the court's proposed jury instructions.  Appellees objected to the court's proposed rulings and proffered their own jury instructions.[29]  The court

---

[28]This point on appeal is moot if the district court's judgment is affirmed.

[29]See objections at Hanna Apdx 1393-1430. The proffered instructions were received by the court at Hanna Apdx 1408.  The proffered instructions appear at Hanna Apdx 1270-1306.

64

overruled Appellees objections and proffered jury instructions (Hanna Apdx 1430-31) and recessed for the evening.

At the beginning of the  the final day of trial, the district court announced its rulings as a matter of law–the rulings it had been "thinking about." (Bank Add 43) The court's rulings were as follows: (1) The Bank did not hold itself out as an agent for the [Appellees] and therefore had no fiduciary duty; (2) the 2005 loan and Swap agreements are two separate and distinct documents that are not to be read together as one document; (3) the parties' written agreements, including the loan documents, Swaps and guaranties, are unambiguous; and (4) the parol evidence rule applies. (Bank Add 43-44). Appellees renewed and amplified their objections to the same. (Bank Add 44-45)  As a consequence of these rulings, the court refused to give Appellees' proffered jury instructions.

## B.    Standard of Review

Whether an issue is properly submitted to the jury is a legal question which this Court reviews *de novo*. *Shaw Hofstra & Assoc. v. Ladco Development*, 673 F.3d 819, 825 (8th Cir. 2012).  The standard of review for the district court's jury instructions is generally for abuse of discretion. *Slidell v. Millennium Inorganic Chemicals*, 460 F.3d 1047, 1054 (8th Cir. 2006).  However, "the refusal to instruct the jury on a defense that was supported by sufficient evidence to create a triable

65

issue [is] an abuse of discretion." *Friedman & Friedman v. McCandless*, 606 F.3d 494, 499 (8th Cir. 2010).

### C. The District Court Erred in Failing to Construe the Note and Swap as One Contract

When multiple documents concerning the same subject matter are executed in the course of one transaction, *e.g.* a loan, they should be read together as a single contract. In *Stokes v. Roberts*, 289 Ark. 319, 711 S.W.2d 757 (1986), the Arkansas Supreme Court ruled:

> When two instruments are executed contemporaneously, by the same two parties in the course of the same transaction, they should be considered as one contract for purposes of interpretation. To arrive at the intention of the parties to a contract, courts may acquaint themselves with the persons and circumstances and place themselves in the same situation as the parties who made the contract. We may also consider the construction the parties themselves place on the contract. ... It is clear the contracts were intended as one and neither party would have agreed to one without the other.

*Id.*, 289 Ark. at 322-23 (internal citations omitted). See also *PC Scale, Inc. v. Roll-Off Services, Inc.*, 2010 Ark. App. 745, *5-6; and AMI 2420.

A review of the evidence before this Court clearly shows that the Note and Swap executed by the parties in 2005 were component parts of a single transaction, intended as one, and neither party would have agreed to one without the other. See *Stokes*, 289 Ark. at 323. Appellees concisely outlined this evidence for the trial

66

court. (Hanna Apdx 1410-15)  The trial testimony of both parties evidenced a clear intent to fix the interest rate by using a Swap in conjunction with the Note.[30]  The documents were part of the same contemporaneous transaction and used to accomplish a singular objective.[31]  Arkansas law applied to these facts establishes that the district court erred as a matter of law in failing to construe and interpret the Note and the Swap as one contract.

> **D.    The Terms of the 2005 Loan are Ambiguous and Therefore Parol Evidence is Admissible and the Jury Should Have Been Instructed on Contract Interpretation.**

The Note and the Swap contain different dates of maturity, *i.e.* 2010 and 2015, respectively. (Hanna Add 28-29, 20-27). The district court wrongly concluded that the Note and Swap were not to be construed together, and ruled "that the written agreements, both the loan agreements and Swaps and guaranties, are unambiguous."  (Bank Add 43).

-----

[30]See trial testimony of Michael Hammond (Tr. 302); Burt Hanna (Tr. 421); and Larry Manry (Tr. 558-59). See also the testimony of expert witness Elaine Philbrick (Hanna Apdx 1365-67).

[31]The Swap was executed on June 29th, with a start date of August 1st, the same date the loan was scheduled to be funded. The intent of the parties is documented in the emails. (Hanna Add 4-7, 10-11, 15-16). The CAR describes the "Transaction" as a credit  facility *and*  a derivative facility.  (Hanna Add 18, 35) The Funding Description Sheet describes the "fundamental business purpose of the transaction" was for the Swap to "match the new [credit] facility." (Hanna Add 30, as further explained by Philbrick at Hanna Apdx 1391-92.)

Appellate Case: 12-3352    Page: 80    Date Filed: 02/07/2013 Entry ID: 4002649

An ambiguity exists where there is uncertainty as to the meaning in a written instrument and the language is fairly susceptible to more than one equally reasonable interpretation. *Alexander v McEwen*, 367 Ark. 241, 246 (2006). When a contract is ambiguous as to the intent of the parties, and the meaning of the language depends on disputed extrinsic evidence, the issue is a question of fact for the jury. *Tri-Eagle Enterprises v. Regions Bank*, 2010 Ark. App. 64, *6-7. The inescapable conclusion in the case at bar is that the parties intended the Swap and the Note to be component parts of the same transaction.[32] The parties clearly differ as to whether they intended for the loan to mature in 2010 or 2015. The resolution depends on "language which is fairly susceptible to more than one equally reasonable interpretation," and intended term of maturity "depends on disputed extrinsic evidence." See, *Alexander* and *Tri-Eagle Enterprises*, supra. Accordingly, the district court erred in concluding that the term of maturity was unambiguous.

When an ambiguity exists, parol evidence is admissible and the meaning of the ambiguous terms becomes a question of fact for the jury. *Minerva Enter., Inc. v. Bituminous Casualty*, 312 Ark. 128 (1993). When the resolution of the ambiguity is a question of fact, the jury must be instructed on the applicable rules

---

[32]See footnotes 30 and 31.

68

of contract instruction.  As explained in the procedural section above, Appellees proffered ambiguity instruction 11A and 11B,[33] as well as contract interpretation instructions 13, 14, 15, 16, 17, 18, and 19.[34]  Without Appellees proffered instructions on ambiguity and contract interpretation, the instructions actually given did not meet the requirement that they "fairly and adequately presented the evidence and the applicable law."  *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 499 (8th Cir. 2010).

### E.    Fiduciary Duty Not Determinative of Fraudulent Inducement and Related Affirmative Defenses

The district court ruled as a matter of law that the Bank did not have a fiduciary duty to the Appellees.  (Bank Add 43) This ruling was the apparent basis for the court's refusal to instruct the jury on fraudulent inducement and related affirmative defenses.[35]   During the meeting in chambers, the court found it significant that the Note and Swap "were bargained-for exchanges" and therefore "the Bank had no fiduciary responsibilities."  (Bank Add 29) In the court's view an

---

[33]The same reasoning applies with respect to Appellees proffered instruction 11B.

[34]See footnote 29 above.

[35]See Instruction No. 23-A – Fraud in the Inducement; Instruction 23-B – Fraudulent Failure to Disclose; and Instruction No. 24 – Duty to Disclose (Hanna Apdx 1300-04).  The proffer argument is at Hanna Apdx 1421-30.

Appellate Case: 12-3352    Page: 82    Date Filed: 02/07/2013 Entry ID: 4002649

affirmative defense of fraudulent inducement may only arise in the context of a fiduciary relationship.[36] Appellees argued there was evidence of the Bank's "you'll pay less interest" false representation, and further argued that the affirmative defense of fraudulent inducement is not predicated on a fiduciary duty, and in fact occurs in arms length transactions. (Bank Add 37)

At the jury instruction conference later that day, Appellees identified evidence in the record to support each individual element of its Proffered Instruction No. 23-A. The trial record reflects proof as to each of the five elements of fraud in the inducement, which creates a triable fact issue for the jury to decide.[37] (Hanna Apdx 1421-26) Appellees respectfully told the court it was "wrong" to not give the fraudulent inducement instructions. (Hanna Apdx 1426) The court overruled the objection and refused to give the instructions. (Hanna Apdx 1431)

---

[36]See transcript of court's explanation at Bank Add 33-36.

[37]Generally, see the evidence is documented at pages 8-10 of the brief. See also point I.A. above of Appellees' Cross-Appeal, as much of the same evidence was introduced at trial. More specifically, the testimony of Burt Hanna established the elements of fraudulent inducement. See Hanna Apdx 1352-63. Appellees' expert, Elaine Philbrick, also testified as to the elements of fraudulent inducement and failure to disclose. See Hanna Apdx 1365-92. Philbrick testified that the Bank's representation regarding less interest with a revised structure was "false" (Hanna Apdx 1373); and in fact $140,000.00 more expensive – which was information known to the Bank at the time the representation was made. (Hanna Apdx 1377-81)

The elements of fraud in the inducement are enumerated at AMI 2433. These elements are based on holdings of the Arkansas Supreme Court in *Galion Ironworks v. Otto Martin Construction*, 176 Ark. 448, 460 (1928); and *Undem v. First National Bank of Springdale*, 46 Ark. App. 158, 164 (1994).

The court ruled as a matter of law that there had to be a fiduciary relationship in order to instruct on fraudulent inducement, and the court found that prerequisite lacking. This Court reviews *de novo*. See *Shaw Hofstra & Associates*, 673 F.3d at 825. The district court's refusal to instruct the jury on Appellees' affirmative defense of fraudulent inducement, which was supported by sufficient evidence to create a triable issue, constituted an abuse of discretion. See *Friedman & Friedman*, 606 F.3d at 499.

The Appellees also proffered Jury Instruction No. 23-B – Fraudulent Failure to Disclose, is a modified version of AMI 2433. The notes on use to AMI 2433 suggest the instruction be modified for instances where the fraud was by concealment or failure to disclose material facts. In its proffer, the Appellees provided the district court with numerous citations to Arkansas law which support the giving of this instruction,[38] including *Ward v. Worthen Bank & Trust Company*,

---

[38]See citations contained on Proffered Instruction No. 23-B at Hanna Apdx 1302.

Appellate Case: 12-3352    Page: 84    Date Filed: 02/07/2013 Entry ID: 4002649

284 Ark. 355 (1984); *Camp v. First Federal*, 12 Ark. App. 150 (1984); and *Merrill Lynch v. First National Bank of Little Rock*, 774 F.2d 909 (8th Cir. 1985). As Appellees argued to the district court, the same factual basis which supports Instruction No. 23-A, also applies to Proffered Instruction No. 23-B. (Hanna Apdx 1181) The court refused to instruct the jury on this affirmative defense, which was an accurate statement of Arkansas law, supported by sufficient evidence to create a triable issue. Such refusal is an abuse of discretion. See *Friedman & Friedman*, 606 F.3d at 499.

Appellees also proffered proposed Jury Instruction No. 24 on the duty to disclose material facts. This instruction is similar to proposed Instruction No. 23-B, but arises in the context where the law imposes a duty on one party to a contract to disclose material facts. This duty arises in the context where one party is in a position to have and to exercise influence over the other party. This duty is established under Arkansas law. *Hanson Motor Company v. Young*, 223 Ark. 191 (1954); *Floyd v. Koenig*, 101 Ark. App. 230 (2008); and *Badger Capital v. Chambers Bank*, 650 F.3d 1125 (8th Cir. 2011).[39] The duty to disclose is concisely explained in *Bank of America v. Narula*, 46 Kan. App.2d 142 (2011). *Narula* is a

_____

[39]See also numerous citations submitted with proposed Instruction No. 24 at Hanna Apdx 1303.

72

case involving a remarkably similar set of facts, whereby the court found that Bank of America had failed to disclose material terms related to a synthetically fixed interest rate loan through the use of a Swap.

The Appellees identified the evidentiary basis for the giving of its proposed Instruction No. 24 (Hanna Apdx 1428-29). Where the Bank's theory was that the Appellees intended to structure the loan with mismatched Note/Swap maturities, this instruction takes on added significance. The Bank had assumed the role of a financial advisor, "recommending" the use of a Swap, and recommending that the structure be changed at the last minute based on the Bank's own profit motive.[40] The Bank knew that the Appellees were relying on its advice. The Bank therefore had a duty to speak. Accordingly, the court erred by refusing to instruct the jury on this accurate statement of Arkansas law, which creates an affirmative defense, supported by sufficient evidence to create a triable issue. The court abused its discretion in failing to give this instruction. *Friedman & Friedman*, 606 F.3d at 499.

### F.    Summary

If this Court affirms the district court's judgment, then the trial court's rulings as identified in this point, and the trial court's failure to instruct on

---

[40]See email communications at Hanna Apdx 1185-93.

Appellate Case: 12-3352     Page: 86     Date Filed: 02/07/2013 Entry ID: 4002649

ambiguity, contract interpretation, and affirmative defenses involving fraudulent inducement and/or failure to disclose would be moot. However, if for whatever reason this Court determines that the Bank is entitled to relief, it should reverse the trial court's rulings as a matter of law, and instruct the court on remand as to the appropriateness of Appellees' proffered jury instructions.

Appellate Case: 12-3352    Page: 87    Date Filed: 02/07/2013 Entry ID: 4002649

## CONCLUSION

For reasons stated above, Appellant Bank of America, N.A., is not entitled to the relief requested in its brief. The district court committed no reversible errors in regard to Appellant's points on appeal, and the judgment entered in favor of Appellees JB Hanna, LLC, Kerzen Properties, LLC, Burt Hanna and Hanna's Candle Company on June 29, 2012 should be affirmed in all respects.

Appellees are, however, entitled to relief on their first point on cross-appeal, as the district court erred in granting Appellant's motion for summary judgment and dismissing their counterclaims for fraud, breach of fiduciary duty, deceptive trade practices, negligence, and punitive damages on statute of limitations grounds. This ruling should be reversed and this action remanded for further proceedings consistent with this decision.

If the Court affirms the district court's judgment on the jury's verdict, then Appellees' second, third, fourth, and fifth points on cross-appeal are moot, and need not be decided on appeal. However, in the event this Court determines Appellant is entitled to relief on appeal, it should also reverse the district court's rulings on these particular points.

Appellate Case: 12-3352    Page: 88    Date Filed: 02/07/2013 Entry ID: 4002649

Respectfully submitted,

JB HANNA, LLC, KERZEN
PROPERTIES, LLC, BURT HANNA AND
HANNA'S CANDLE COMPANY,
Appellees/Cross-Appellants

By: /s/   Timothy L. Brooks
Timothy L. Brooks, #89187
Jeff Mitchell, #95149
William B. Putman, #91198
Taylor Law Partners LLP
P.O. Box 8310
Fayetteville, Arkansas 72703
Telephone:  479-443-5222
Facsimile:  479- 443-7842
E-mail:  tbrooks@taylorlawpartners.com
E-mail: jmitchell@taylorlawpartners.com
E-mail: wbputman@taylorlawpartners.com

76

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document, including all headings, footnotes, and quotations, but excluding summary of the case, the table of contents, table of authorities, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 16,483 words, as determined by the word count of the word-processing software used to prepare this document, specifically Word Perfect X5 in Times New Roman 14 point font, which is no more than 16,500 words permitted under Fed.R.App.P. 32(a)(7)(B)(i).

Dated: February 6, 2013.

Respectfully Submitted,

/s/ Timothy L. Brooks

77

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief and addendum in non-scanned PDF format.  I hereby certify that the file has been scanned for viruses and that it is virus-free.

/s/ Timothy L. Brooks

Appellate Case: 12-3352    Page: 91    Date Filed: 02/07/2013 Entry ID: 4002649

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 6, 2013, an electronic copy of the Brief of Defendants-Appellees/Cross-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that the following participants in this case are registered CM/ECF users and that service of the Brief will be accomplished by the CM/ECF system:

| | |
|---|---|
| John Keeling Baker<br>Lance R. Miller<br>MITCHELL & WILLIAMS<br>425 W. Capitol Avenue, Suite 1800<br>Little Rock, AR 72201 | Thomas Walsh<br>BRYAN & CAVE<br>3600 One Metropolitan Square<br>211 N. Broadway<br>Saint Louis, MO 63102-2186 |
| Theresa L. Davis<br>Melissa A. Mickey<br>Michael L. Molinaro<br>LOEB & LOEB<br>321 N. Clark Street, Suite 2300<br>Chicago, IL 60654 | Stanley D. Smith<br>Leigh Anne Yeargan<br>MITCHELL & WILLIAMS<br>5414 Pinnacle Point Drive, Suite 500<br>Rogers, AR 72758 |

I further certify that the following attorney is not a registered CM/ECF user. On February 6, 2013, one copy of Brief was sent via regular mail, postage prepaid, properly addressed as follows:

Appellate Case: 12-3352    Page: 92    Date Filed: 02/07/2013 Entry ID: 4002649

Steven L. Brooks
FRIDAY & ELDREDGE
600 S. 52nd Street, Suite 200
Rogers, AR 72758

/s/  Timothy L. Brooks

80